## No. 14,790.

ARMSTRONG, STATE TREASURER *v.* CARMAN DISTRIBUTING COMPANY.

(115 P. [2d] 386)

Decided June 30, 1941.

Mr. BYRON G. ROGERS, Attorney General, Mr. GEORGE K. THOMAS, Assistant, Mr. S. T. ANDERSON, Special Assistant, Mr. GAIL L. IRELAND, Attorney General, for plaintiff in error.

Mr. WM. F. McGLONE, for defendant in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

BY its complaint the defendant in error, plaintiff below, sought a declaratory judgment proclaiming that certain sales of tangible personal property allegedly made by it as a wholesaler and jobber, to a large number of publicly patronized laundries and dry cleaning plants in Colorado, were not subject to the imposition of a sales tax under the Emergency Retail Sales Tax Act (chapter 230, S.L. 1937), and further asked that the state treasurer, plaintiff in error here, be enjoined from collecting a sales tax thereon. The treasurer prosecutes this proceeding in error to review a judgment entered in accordance with plaintiff's prayer following the treasurer's election to stand upon a general demurrer to the complaint, which had been overruled by the trial court.

Under the sales tax act only retail sales, defined therein as "all sales made within the state except wholesale sales" (section 2[g]), are taxable. A "wholesale sale," not taxable under the act, is defined by section 2(e) to be a "sale by wholesalers to retail merchants, jobbers, dealers or other wholesalers for resale." As furnishing definitives of further exempted sales, section 2(n) provides: "Sales to and purchases of tangible personal property by a person engaged in the business of

manufacturing, compounding for sale, profit or use, any article, substance or commodity, which tangible personal property enters into the processing of or becomes an ingredient or component part of the product or service which is manufactured, compounded or furnished and the container, label, or the furnished shipping case thereof, shall be deemed to be wholesale sales and shall be exempt from taxation * * *." In a taxable sale transaction, under the Colorado act, the vendor is charged with the duty of collecting the tax. Section 5. Allegedly within the category of dispute here as classified by plaintiff, are the sales of the following articles: (1) Soaps, starches, alkalies, acids, etc.; (2) cloths, fabrics, buttons, threads, etc.; (3) bags, paper boxes, envelopes, twine, etc. As the pending controversy, the complaint sets forth that "plaintiff contends * * * that all of the sales of such tangible personal property, herein described, constitute wholesale sales, and as such are not subject to the imposition of any sales taxes; that a portion thereof are such wholesale sales as are defined in said Section 2(n) of said Article I, and as to the remainder of such sales, they constitute wholesale sales of such tangible personal property to said laundries and cleaning plants for the purpose of resale by them, as provided and defined by said act, while defendant contends that all of such sales are taxable retail sales, and insists and demands [by what is designated as Treasurer's Special Ruling 165] that plaintiff shall collect sales taxes and remit the same and make a return thereof to him upon all such sales, which plaintiff refuses to do; that as a result of such demand and refusal, the plaintiff is presently threatened with an arbitrary assessment of sales taxes alleged by the defendant to be due from it upon such sales, together with the distraint of its property by the defendant and his agents," unless restrained by order of court.

It is further alleged: "That the defendant State Treasurer has, by regulation and order, construed and ordered

that the income received by said laundries and cleaning plants from their said customers is subject to taxation at the rate of two per cent (2%), under and according to the provisions of said 'Service Tax Act,' and has ordered the said laundries and cleaning plants to collect the same from their customers and to account for, remit and pay over said tax to the defendant, as required in regard to service taxes collected, as provided in said 'Service Tax Act'." (chapter 158, S.L. 1939). The pleadings do not disclose whether this order has been followed and obeyed.

The plaintiff further pleaded, in substance, that the laundries and cleaning plants purchasing such tangible personal property used and disposed of it in the following manner:

(a) Those items described in the first classification are compounded by the laundries and cleaners for their own use, and used in various washing, cleaning and finishing compounds and substances used by them in furnishing services to their customers, and which said items of property enter into the processing of, and become an ingredient and component part of, the services they furnish and sell their customers.

(b) Those items described in the second classification are by them attached to and become an ingredient or component part of certain of the articles serviced by them, and, when delivered to their customers, the title to such items and the ownership thereof is transferred to said customers, and they are charged and pay for the same.

(c) Those items described in the third classification are used by them to mark, label, wrap and package the said articles serviced by them for their customers, and, as so used, they become the container, label, or the furnished shipping case therefor, and, upon delivery thereof is transferred to said customers.

The complaint contains no further allegations concerning the means of utilization of the purchased arti-

cles, the business practices adopted in their subsequent distribution, the methods by which the customers of the laundries and dry cleaners, as alleged, are "charged and pay" for certain said articles or the procedure followed in the collection of sales or service taxes from such customers.

It is readily apparent that the foregoing allegations relating to the disposition of the goods made by the buyers, if true in fact, branded the sales of the items in class 2, and possibly in class 3, as being outright sales for resale in tangible form, thereby making such transactions wholesale nontaxable sales under section 2(e) supra, and brought the sales of the items in classes 1 and 3 within the express exemption of section 2(n), supra, if it is applicable to services of the type herein involved, which is challenged by the treasurer on a basis hereinafter to be mentioned.

■ Since, for the purposes of the general demurrer the facts set out in the complaint must be assumed to be true, the interposition of such here, in view of the allegations last discussed, had the effect of confessing, at least, that the sales of the articles mentioned in class 2 had a nontaxable status under a subdivision of the statute [2(e)], the pertinence of which is unquestioned.

■ It is elementary that a general demurrer directed to a complaint as a whole must be overruled if a valid cause of action is stated even though in some particulars, by reason of legal insufficiency, the allegations of the complaint may not warrant the granting of all the relief sought. See, *Auto Owners Ass'n v. Pollard*, 74 Colo. 524, 223 Pac. 38. Thus, even if the word "service" as used in section 2(n) of the Sales Tax Act, supra, does not include the services described in the complaint as being rendered by the laundries and dry cleaners and the exemptions of said sections consequently are not available to plaintiff, as the treasurer contends, and concerning which, under the state of the record, we may not with propriety express an opinion, it is, neverthe-

less, certain that in the light of the mentioned assumption present in a consideration of the demurrer, the district court had no alternative other than to overrule it. That counsel for the treasurer have not fully considered the effect of their general demurrer appears evident from their contentions here. For example, as the *factual premise* of their argument on the merits, it is recited in their brief: "It must be observed at the outset, that the uses to which the articles purchased from the distributor [plaintiff] are put by the laundries and cleaning establishments are, (a) They are either consumed by the purchaser in the course of servicing, or (b) They are attached to articles left to be cleaned or laundered by way of servicing, delivery or repairs. No charge or sale is made to the patron for the particular articles so attached in the course of repairing or servicing. For example, most of the laundries herein involved made and receive the same price for washing and ironing a shirt without repairs, as they do for one on which they have sewed a button or mended a cuff. A sale to be taxable must carry a purchase price. Since the patron pays nothing for the button or thread used and expended in the repair of his garment, the transaction is a gift of the button or material. So, when these articles are used and consumed by the laundries in the course of their repair service as supplies and materials or are given away gratis with the return of the article to the original owner, they cannot be said to be sold at retail. Under such circumstances, the laundries and cleaning establishments become and are the ultimate user or consumer of the articles listed in Exhibit 'A'. Instead of a sale for resale (a wholesale sale) from the distributor to its customers, we have an outright retail sale of supplies and material from the distributor to the ultimate consumer."

When the allegations of the complaint pertaining to the use and disposition of the articles purchased, which provide the only authentic source of information

under the state of the record, are compared with the foregoing recital of purported facts, the variance, as well as the inconsistency between the actual and the assumed premise of permissible argument is immediately patent. It is likewise obvious from the contrast between the two that much of the factual material included in the treasurer's narration must have been derived from origins other than the record. The circumstance that extrinsic material, even though the truth of such is not questioned by the plaintiff, must be imported to disclose what seems to be the real controversy, indicates unmistakably that, except possibly for the purely legal question concerning the applicability of section 2(n), supra, to a portion of the transactions involved, the actual dispute can only be resolved by a consideration of proven or stipulated facts pertaining to the use and disposition of the articles purchased from the time thereof until in original or altered form they reach the hands of the purchasers' customers. Such has generally been the practice in cases involving similar questions. *Bedford v. Colorado Fuel & Iron Corp.,* 102 Colo. 538, 81 P. (2d) 752; *Fifteenth Street Inv. Co. v. People,* 102 Colo. 571, 81 P. (2d) 764; *Bedford v. Johnson,* 102 Colo. 203, 78 P. (2d), 373, and *Bedford v. Hartman Brothers,* 104 Colo. 190, 89 P. (2d) 584.

While, as has been said, we are convinced the trial court was right in overruling the treasurer's demurrer to the complaint, we question whether, in view of the essentiality of a comprehensive factual foundation upon which to make the declarations sought in this particular case, the judgment entered pro forma as a result of the treasurer's election to stand on his demurrer could have the effect of legitimately terminating the uncertainty and controversy giving rise to the proceeding. Rather, we think, as section 83, chapter 93, '35 C.S.A., of the Uniform Declaratory Judgment law (Rule 57 [f] R.C.P. Colo.), contemplates, the district court should have refused to render a declaratory judgment or grant the

injunctive relief asked until evidence was produced affording a basis for conclusions with respect to proper declarations to be made and the relief to be granted.

Accordingly, we affirm the action of the district court in overruling the treasurer's demurrer, but remand the cause with directions to vacate the judgment in all other particulars, with leave to the treasurer to answer if so advised, in which event, or in default thereof, the district court may proceed to the disposition of the proceeding consistently with the views hereinabove expressed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK not participating.