James R. WILLER, Plaintiff–Appellant and Cross–Appellee,

v.

The CITY OF THORNTON, a Municipal Corporation, Defendant–Appellee and Cross–Appellant.

No. 90SA211.

Supreme Court of Colorado, En Banc.

Sept. 16, 1991.

lantly exits the courtroom smirking from ear to ear?"

Robert Lynn Taylor, Alan R. Marsh, Denver, for plaintiff-appellant and cross-appellee.

Watson, Nathan & Bremer, P.C., Daniel J. Torpy, Denver, for defendant-appellee and cross-appellant.

Justice KIRSHBAUM delivered the Opinion of the Court.

Appellant and cross-appellee James R. Willer (Willer) seeks review of the trial court's order granting a motion filed by appellee and cross-appellant City of Thornton (the City) to dismiss a civil action initiated by Willer against the City. The complaint sought recovery of damages for injuries allegedly sustained by Willer in an automobile accident that occurred on a street owned by the City. The trial court held that Willer's claims against the City were barred by section 24–10–106(1)(d), 10A C.R.S. (1988) of the Colorado Governmental Immunity Act (the Act). The trial court also denied a motion for attorney fees filed by the City. We affirm the judgment of the trial court.[1]

## I

The facts underlying Willer's complaint are undisputed for purposes of this appeal. He alleges that on the evening of March 12, 1987, while driving westward on Milky Way, a street owned and maintained by the City, the front wheels of his car struck a depression at the intersection of that street and Santa Fe Drive. He further alleges that the impact caused structural damage to the car and caused Willer to strike his head against the roof of the car, resulting in injuries to his neck and back.

Sometime after the accident, Willer sent a letter, undated, to the Colorado Intergovernmental Risk Sharing Agency, a self-insurance pool of which the City is a member, informing the Agency of the incident.[2] On June 9, 1987, the Agency informed Willer in writing that his letter had been received and that the City denied any liability for the asserted damages.

Willer filed his complaint on March 13, 1989, alleging that the City was negligent (1) in "locating, constructing, and maintaining" the intersection of Milky Way and Santa Fe Drive in such a way that the intersection was dangerous to vehicles lawfully traveling through the intersection; (2) in failing to construct and maintain the intersection in conformity with generally accepted and recognized modes of construction and maintenance; (3) in failing to adequately light the intersection; (4) in failing to post warning signs or signals; and (5) in maintaining the "dip" in such a way that it "materially interfered with public travel and endangered the safety of lawful travelers on the public street."

On March 23, 1989, the City filed a motion to dismiss Willer's complaint under C.R.C.P. 12(b), asserting, *inter alia*, that Willer's claims were barred by provisions of the Act insulating governmental entities from liability for Claims based solely on allegedly inadequate design of a public facility or an alleged lack or inadequacy of "traffic signs, signals, or markings." Sec-

---

1. Initially filed in the Court of Appeals, this appeal was transferred to this court because of the presence of a challenge to the constitutionality of a statute. *See* § 13–4–102(1)(b), 6A C.R.S. (1987).

2. Willer's letter states as follows:
   ON MARCH 12TH, 1987, AT APPROXIMATELY 7:10 PM, WHILE TRAVELING WESTBOUND ON MILKYWAY APPROACHING SANTA FE, MY CAR STRUCK AN UNMARKED DIP IN THE ROAD. THE IMPACT CAUSED THE FRONT END OF MY CAR TO AT FIRST PITCH UP VIOLENTLY, NEARLY LEAVING THE GROUND, THEN SLAMMED BACK DOWN, CAUSING THE TRUNK LID TO FLY OPEN AND THE TRUNK HINGES TO BEND. THE FRAME OF MY CAR IMPACTED WITH THE DIP AND THE STREET. THE REACTION THREW ME IN THE AIR AS MY HEAD IMPACTED THE ROOF OF MY CAR, CAUSING HEAD AND NECK DISCOMFORT.

tions 24–10–103(1), 24–10–106(1)(d), 10A C.R.S. (1988). The City also argued that Willer's undated letter did not satisfy the notice requirements of section 24–10–109(3), 10A C.R.S. (1988). Relying on the Court of Appeals decision of *Szymanski v. Department of Highways*, 776 P.2d 1124 (Colo.App.1989), the trial court concluded that Willer's claims in essence alleged negligent design of an intersection and granted the City's motion.

On June 28, 1989, the City filed a motion for recovery of attorney fees in the amount of $983, pursuant to section 13–17–201, 6A C.R.S. (1987). The trial court denied the City's motion.

## II

Willer initially asserts that the trial court improperly concluded that his complaint alleged only inadequate design of the intersection. He argues alternatively that the Act on its face violates the equal protection provisions of the fourteenth amendment of the United States Constitution and article II, section 25, of the Colorado Constitution.

## A

■ Section 24–10–108 of the Act provides that "sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort," except as specifically provided in other provisions of the Act. Section 24–10–108, 10A C.R.S. (1988). Section 24–10–106(1)(d) of the Act provides in pertinent part as follows:

(1) ... Sovereign immunity is waived by a public entity in an action for injuries resulting from:

....

(d) A dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic ... within the corporate limits of any municipality....

Section 24–10–106(1)(d), 10A C.R.S. (1988). Section 24–10–103(1) of the Act defines a "dangerous condition" as follows:

[A] physical condition of a facility or the use thereof which constitutes an unrea-

sonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing and maintaining such facility.... A dangerous condition shall not exist solely because the design of any facility is inadequate.

Section 24–10–103(1), 10A C.R.S. (1988).

Willer's complaint alleges that the City was negligent in "locating, constructing, and maintaining" the intersection and in "failing to construct and maintain said intersection in conformity with the generally accepted and recognized modes of construction and maintenance." It also alleges that the "design, construction, and/or maintenance of the intersection ... constitutes a 'dangerous condition', as that term is defined in C.R.S. Section 24–10–103(1)." Thus Willer sought to avoid the limitations of the Act by the terms of his complaint. However, the complaint does not allege that the City's acts in constructing or maintaining the intersection differed in any way from the provisions for construction and maintenance of the intersection contained in the initial design. To the contrary, the complaint in essence asserts that the alleged failure to adequately construct or maintain the intersection consisted of a failure to post signs warning of the existence of the dip.

The circumstances here are quite similar to those considered by our Court of Appeals in *Szymanski v. Department of Highways*, 776 P.2d 1124 (Colo.App.1989). In *Szymanski*, a motorcycle collided with an automobile at an intersection in the city of Colorado Springs. The driver of the motorcycle filed a civil action against the Colorado Department of Highways, alleging that a "blind spot" in the intersection, improper sight lines, an excessive speed limit, and a lack of warning signs combined to cause his injuries. Observing that "[d]espite plaintiffs' attempts to characterize these alleged flaws as other than design defects, all of them relate to claimed inadequacies in the design of that intersection,"

*Szymanski,* 776 P.2d at 1125, and noting that section 24–10–106(1)(d), 10A C.R.S. (1988), provides that a lack of traffic signs does not constitute physical interference with traffic, the court concluded that the claims were basically claims of inadequate design and were barred by the Act. In this case, Willer's injuries resulted from the presence of a sharp dip in the roadway—a dip that was part of the initial design and construction of the intersection. The rationale of *Szymanski* is applicable, notwithstanding Willer's allegations of negligent construction and maintenance.

■ Willer also argues that the Act should be construed to bar only "inadequate," not "negligent," designs. He suggests that a roadway may be deemed "inadequate" for purposes of the Act only if it proves insufficient to support the volume of traffic using the roadway. He contends that a design resulting in the construction of a roadway that is defective when built constitutes a "negligent" design for purposes of the Act and that claims for injuries resulting from such negligence should not be barred. We reject this proposed construction.

■ In interpreting statutory provisions, a court must endeavor to give effect to the intent of the General Assembly. *State v. Hartsough,* 790 P.2d 836 (Colo. 1990). While the Act is in derogation of the common law and therefore must be strictly construed, *Stephen v. City and County of Denver,* 659 P.2d 666 (Colo. 1983), forced, subtle, strained or unusual interpretations should never be employed where the language of a statute is plain and its meaning is clear. *Harding v. Industrial Comm'n,* 183 Colo. 52, 515 P.2d 95 (Colo.1973).

The Act was adopted by the General Assembly in 1971 in response to three decisions of this court eliminating the common law doctrine of sovereign immunity as a defense in tort actions.[3] *Stephen v. City and County of Denver,* 659 P.2d at 668 n. 3. The Act established a defense of sover-

eign immunity for governmental entities in most tort actions, but provided six categories of acts for which such immunity was waived, including: "[a] dangerous condition which interferes with the movement of traffic on the traveled portion and shoulders or curbs of any public highway...." Section 24–10–106(1)(d), 10 C.R.S. (1973). The scope of "dangerous conditions" for which sovereign immunity was waived was originally limited by the inclusion of the phrase: "A dangerous condition shall not exist solely because the design of any facility set forth in this subsection (1) is inadequate in relation to its present use." Section 24–10–103(1), 10 C.R.S. (1973). However, the General Assembly amended the definition of "dangerous condition" in 1986 to provide that: "A dangerous condition shall not exist solely because the design of any facility is inadequate." Ch. 166, sec. 5, § 24–10–103(1), 1986 Colo.Sess.Laws 874.

The deletion of the phrase "in relation to its present use" from the definition of "dangerous condition" indicates that, contrary to Willer's argument, the General Assembly did not intend to provide sovereign immunity only in cases where increased traffic volume renders a roadway inadequate. *See Madill v. County of Adams,* 799 P.2d 949 (Colo.App.1989); *Schlitters v. State,* 787 P.2d 656 (Colo.App. 1989); *Karr v. City and County of Denver,* 677 P.2d 1384 (Colo.App.1984). The statutory language negates the proposition that the General Assembly intended to distinguish between designs that are "inadequate" initially and designs which become "inadequate" over a period of time.

■ Willer also argues that the trial court improperly failed to consider that his complaint alleged that the City negligently failed to post warning signs even though its officers, agents or employees knew or should have known that the dip in the intersection posed a hazard. The Act itself addresses the circumstance of a failure to provide traffic signs or markings when injuries result from a dangerous condition, as

---

**3.** *See Evans v. Board of County Comm'rs,* 174 Colo. 97, 482 P.2d 968 (1971); *Flournoy v. School Dist. No. 1,* 174 Colo. 110, 482 P.2d 966 (1971); *Proffitt v. State,* 174 Colo. 113, 482 P.2d 965 (1971).

follows: "the phrase 'physically interferes with the movement of traffic' shall not include traffic signs, signals, or markings, or the lack thereof." Section 24–10–106(1)(d), 10 C.R.S. (1988). This language excludes the failure to post warning signs from the general waiver of sovereign immunity for injuries resulting from dangerous conditions. Whatever the merits of Willer's argument that a governmental entity should never be granted the protection of sovereign immunity when it fails to warn others of known dangerous conditions, the Act reveals a contrary legislative intent when the alleged defect is incorporated in the initial design.

**B**

█ Willer argues in the alternative that the 1986 amendments to sections 24–10–103(1) and 24–10–106(1)(d) of the Act violate the guarantees of equal protection of the law provided by the fourteenth amendment of the United States Constitution and article II, section 25, of the Colorado Constitution. Willer contends that the Act creates an arbitrary, irrational classification by barring claims of plaintiffs allegedly injured as the result of a negligent failure to post warning signs of known dangerous conditions in roadways while permitting plaintiffs allegedly injured by negligent construction or maintenance of roadways to pursue their claims. We reject this argument.

█ An equal protection challenge to legislation in general requires application of one of three standards of review, depending on the circumstances in which the challenge arises. *Austin v. Litvak*, 682 P.2d 41 (Colo.1984); *Lujan v. Colorado State Bd. of Educ.*, 649 P.2d 1005 (Colo. 1982). A standard of "strict scrutiny," pursuant to which the state has the burden of establishing that the classification serves a compelling governmental interest and that the legislation is necessary for the accomplishment of such purpose, is applicable when it appears that a fundamental right has been abrogated or that a suspect classification has been established. *Austin v. Litvak*, 682 P.2d at 49. An "interme-

diate" standard of review, pursuant to which the state must demonstrate that a challenged classification serves an important governmental interest and that the legislation is substantially related to such purpose, is applicable when a statutory scheme affects a quasi-suspect class. *Id.*

█ When a statutory scheme does not abrogate a fundamental right or create a suspect or quasi-suspect classification, a "rational basis" standard provides the appropriate analytical framework. *Id.* at 50. Under the rational basis test, a legislative scheme does not violate equal protection limitations if the governmental interest in question is reasonable and legitimate and the legislation bears a rational relationship to such interest. *Id.* When the rational basis standard is applicable, the party challenging the legislation must establish beyond a reasonable doubt that the governmental purpose is not reasonable or legitimate or that the legislation is not reasonably related to a purpose that is reasonable or legitimate. *Lee v. Colorado Dep't of Health*, 718 P.2d 221, 227 (Colo.1986). In the instant case, Willer concedes that the rational basis test is applicable. *See Bloomer v. Boulder County Bd. of Comm'rs*, 799 P.2d 942 (Colo.1990); *Lee v. Colorado Dep't of Health*, 718 P.2d 221 (Colo.1986).

We have previously recognized three primary goals sought to be achieved by the General Assembly in amending the Act in 1986: to address certain judicial constructions perceived to have unduly limited the effect of the prior governmental immunity act, to address a perceived insurance crisis faced by municipalities, and to reduce the circumstances in which municipalities and taxpayers could experience excessive or unpredictable liability. *City of Aspen v. Meserole*, 803 P.2d 950, 953 (Colo.1991). The prefatory declaration of policy contained in the Act, as amended in 1986, states as follows:

The general assembly also recognizes that the state and its political subdivisions provide essential public services and functions and that unlimited liability could disrupt or make prohibitively ex-

pensive the provision of such essential public services and functions. The general assembly further recognizes that the taxpayers would ultimately bear the fiscal burdens of unlimited liability and that limitations on the liability of public entities and public employees are necessary in order to protect the taxpayers against excessive fiscal burdens.

Section 24–10–102, 10A C.R.S. (1988). We find these purposes to be reasonable and well within the authority of the General Assembly. *See, e.g., Evans v. Board of County Comm'rs,* 174 Colo. 97, 482 P.2d 968 (1971).

Willer in essence concedes this point. He rather contends emphatically that the legislation is not reasonably related to the ends sought to be achieved. We disagree.

The 1986 amendments here challenged re-affirm a distinction long recognized in Colorado between persons injured as a result of inadequate design of a public facility and persons injured as a result of negligence in the construction or maintenance of a public facility. *See City of Denver v. Capelli,* 4 Colo. 25, 27 (1877); *City of Denver v. Rhodes,* 9 Colo. 554, 563, 13 P. 729, 734 (1886); *Cooper v. Hollis,* 42 Colo.App. 505, 600 P.2d 109 (1979); *Winters v. City of Commerce City,* 648 P.2d 175, 177 (Colo. App.1982). These cases recognize a distinction between nondiscretionary or ministerial governmantal conduct, for which the doctrine of sovereign immunity provides no protection, and discretionary or planning governmental conduct, to which the doctrine is particularly designed to apply. *Trimble v. City & County of Denver,* 697 P.2d 716 (Colo.1985).

In its 1986 amendments to the Act, the General Assembly has simply determined that in general the question of whether warning signs are to be installed initially at particular places along public roadways is a discretionary planning function which must be shielded from the threat of negligence litigation to ensure optimal performance of such function by city officials. Planning conduct performed prior to the construction of a facility is distinguishable from conduct performed subsequent to the design stage

necessary for proper and safe construction or maintenance of facilities. *See Winters v. City of Commerce City,* 648 P.2d at 177. We find the distinction reasonable, and reject Willer's contrary argument.

### III

■ The City argues on cross-appeal that it is entitled to recover its attorney fees associated with this appeal, pursuant to section 13–17–201, 6A C.R.S. (1987). We disagree.

Section 13–17–201 states in full as follows:

> **Award of reasonable attorney fees in certain cases.** In all actions brought as a result of a death or injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action. This section shall not apply if a motion under rule 12(b) of the Colorado rules of civil procedure is treated as a motion for summary judgment and disposed of as provided in rule 56 of the Colorado rules of civil procedure.

Section 13–17–201, 6A C.R.S. (1987). In its order denying the City's motion, the trial court stated that the motion "was treated as a [m]otion for [s]ummary [j]udgment in this case," and that therefore section 13–17–201 "does not apply."

■ Rule 12(b) of the Colorado Rules of Civil Procedure provides, in pertinent part, as follows:

> If, on a motion asserting the defense ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

C.R.C.P. 12(b), 7A C.R.S. (1990). The City argues that because no affidavits or documents outside the pleadings were submitted to the trial court, it erred in treating the motion as a motion for summary judgment. However, a motion for summary judgment may be filed "with or without supporting affidavits." C.R.C.P. 56(b), 7A C.R.S. (1990). Furthermore, the fact that C.R.C.P. 12(b) requires a trial court to treat C.R.C.P. 12(b)(5) motions as summary judgment motions when matters outside the pleadings are presented to and not excluded by the court does not prohibit a trial court from treating C.R.C.P. 12(b)(5) motions as summary judgment motions in other circumstances.

The City's C.R.C.P. 12(b) motion asserted not only that Willer's complaint should be dismissed for failure to state a claim upon which relief could be granted, but also contended that Willer's claims were "barred by the sovereign immunity provisions of [the Act]" and that Willer's letter describing the accident did not satisfy the notice provisions of section 24–10–109, 10A C.R.S. (1988).[4] In granting the City's motion, the trial court concluded that Willer's claims were barred by certain provisions of the Act. The trial court necessarily construed the Act in reaching that legal conclusion. Although it is clear that no material facts were disputed by the parties with regard to the ground upon which the trial court based its conclusion, resolution of the notice issue might well have required resolution of disputed fact issues. Under these circumstances, we find no basis to conclude that the trial court erred in treating the City's motion to dismiss as a C.R.C.P. 56 motion for summary judgment.

 The City's argument that this appeal is frivolous is without merit. Willer's constitutional challenge to the Act is not insubstantial, and at the least may be categorized as a good faith effort to establish a new theory of law. Section 13–17–102(7), 6A C.R.S. (1987).[5] Furthermore, while the result here is in accord with the decision of *Szymanski v. Department of Highways*, 776 P.2d 1124 (Colo.App.1989), the circumstances of this case differ from those present in *Szymanski*. Finally, it is noteworthy that the City did not seek a trial court ruling that Willer's claims were frivolous. Under these circumstances, we reject the City's argument that Willer's appeal of the trial court's adverse decision is frivolous. *See Federal Land Bank of Wichita v. Jost*, 761 P.2d 270 (Colo.App. 1988).

IV

For the foregoing reasons, the judgment of the trial court is affirmed.

---

**4.** The trial court did not address this latter question, and although the City has preserved its interest in this issue in its cross-appeal, we do not reach it in view of our conclusion that Willer's claims are barred by the Act.

**5.** That statute states as follows:

No attorney or party shall be assessed attorney fees as to any claim or defense which the court determines was asserted by said attorney or party in a good faith attempt to establish a new theory of law in Colorado. Section 13–17–102(7), 6A C.R.S. (1987).