In the Matter of the ADOPTION OF
T.K.J. and K.A.K., Children,

Upon the Petition of G.K.
and L.J., Appellants,

and

State of Colorado, Appellee.

Nos. 95CA0531, 95CA0532.

Colorado Court of Appeals,
Div. I.

June 13, 1996.

Rehearing Denied Aug. 1, 1996.

Certiorari Denied Jan. 21, 1997.

Holme Roberts & Owen, LLC, Katherine J. Peck, Denise M. DeForest, Denver, for Appellants.

Jeanine M. Pow, P.C., Jeanine M. Pow, Boulder (Opening Brief Only).

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Wade Livingston, First Assistant Attorney General, Paul Farley, Deputy Attorney General, Denver, for Appellee.

James A. Henderson, Denver, Amicus Curiae, Lambda Legal Defense & Education Fund, Inc., Colorado Lesbian & Gay Law Association.

Opinion by Judge METZGER.

Petitioners, G.K. and L.J., appeal the judgment which dismissed their petitions seeking the adoption of two children, T.K.J. and K.A.K., for lack of jurisdiction. We affirm.

Petitioners live together as same-sex domestic companions. Each is the natural mother of one of the two children who are the subject of the petition. Each petitioner sought a "co-parent" adoption decree that would, in effect, grant her the rights and duties associated with a "stepparent adoption" for the other petitioner's child, while retaining her parental rights over her natural child.

Before seeking the adoptions, petitioners took steps to preserve an ongoing relation-

ship with each other's child. Each has designated the other as the guardian or conservator for her child. Likewise, each has conferred on the other durable medical and financial powers of attorney and has executed durable powers of attorney for her child, designating the other as agent for purposes of exercising parental decisions. Additionally, petitioners prepared mutual wills and testamentary trusts listing each other as primary beneficiaries and the children as alternate beneficiaries. Thus, regardless of any additional benefits that would have accrued had the adoption petitions been granted, petitioners readily acknowledge that: "This family will remain intact even if the adoptions are not granted."

The district court determined that the children were not "available for adoption" within the meaning of § 19–5–203, C.R.S. (1995 Cum.Supp.) because the petitioners were not married to each other and because each petitioner sought to retain parental rights over her natural child while consenting to the other petitioner's adoption of her child. Accordingly, it concluded that it was without jurisdiction to rule on the petitions, and entered a judgment of dismissal.

## I.

Petitioners first contend that the district court erred in determining that, because they were not married and each declined to relinquish her parent-child relationship with her natural child, the children were not available for adoption. We find no error.

■ Adoption is a creature of statute and is governed by the provisions set out in § 19–5–201, et seq., C.R.S. (1995 Cum.Supp.). *In re Petition of S.O.*, 795 P.2d 254 (Colo.1990). Thus, if a proposed adoption fails to conform to statutory requirements, the effort to adopt must fail, and a trial court has no power to enter a decree of adoption. *Lien v. Gertz*, 158 Colo. 416, 407 P.2d 328 (1965); *Johnson v. Black*, 137 Colo. 119, 322 P.2d 99 (1958).

Section 19–5–201 provides that a child may be adopted if he or she is under the age of 18 and is present in the state at the time the petition for adoption is filed. However, the child must be "available for adoption" as defined by § 19–5–203.

As pertinent here, § 19–5–203 provides:

(1) A child may be available for adoption *only upon:*

(a) Order of the court terminating the parent-child legal relationship in a proceeding brought under article 3 or 5 of this title;

(b) Order of the court decreeing the voluntary relinquishment of the parent-child legal relationship under section 19–5–103 or 19–5–105;

. . . .

(d) (I) Written and verified consent of the parent in a stepparent adoption where the other parent is deceased or his parent-child legal relationship has been terminated under paragraph (a) or (b) of this subsection (1);

(II) Written and verified consent of the parent in a stepparent adoption where the other parent has abandoned the child for a period of one year or more or where he has failed without cause to provide reasonable support for such child for a period of one year or more.

. . . .

(f) Written and verified consent of the parent or parents as defined in section 19–1–103(21) in a stepparent adoption where the child is conceived and born out of wedlock. (emphasis added)

Also relevant to this inquiry is § 19–5–211, C.R.S. (1995 Cum.Supp.) which provides in pertinent part that, after a final decree of adoption is entered by the district court:

(2) The natural parents *shall* be divested of all legal rights and obligations with respect to the child, and the adopted child shall be free from all legal obligations of obedience and maintenance with respect to the natural parents.

(3) Nothing in this part 2 *shall* be construed to divest any natural parent or child of any legal right or obligation where the adopting parent is a stepparent *and* is married to said natural parent. (emphasis added)

## A.

■ In essence, petitioners argue that, because these statutes are silent on whether a person can adopt the child of a parent to whom the person is not married, without terminating the parent's rights and duties to the child they are ambiguous. Petitioners further contend the resolution of such ambiguity must be in favor of adoption based on the best interests of the children. We disagree.

■ It has been held that adoption statutes are to be given a liberal construction to carry out their beneficial purpose of promoting the welfare of the child. *Stjernholm v. Mazaheri,* 180 Colo. 352, 506 P.2d 155 (1973). However, liberal construction does not permit a court to rewrite the statute; instead, this principle may be used only to uphold the beneficial intent of the General Assembly when the wording of the statute creates a doubt. *Denver United States National Bank v. People ex rel. Dunbar,* 29 Colo.App. 93, 480 P.2d 849 (1970); *see also In re Marriage of Swink,* 807 P.2d 1245 (Colo.App.1991); § 2–4–212, C.R.S. (1980 Repl.Vol. 1B).

■ Thus, we must first look to the statutory language itself and give the words and phrases their commonly accepted and understood meaning. And, if we can give effect to the ordinary meaning of the words adopted by the General Assembly, we must apply the statute as written. *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049 (Colo.1995).

Both §§ 19–5–203 and 19–5–211 are phrased in mandatory language. Section 19–5–203(1) states: "A child may be available for adoption *only upon* ..." the fulfillment of certain enumerated conditions. (emphasis added) In this context, the word "only" is synonymous with "exclusively" or "solely," *see Webster's Third New International Dictionary* 1577 (1986), and its use serves to delimit the types of conditions that could make a child available for adoption. Similarly, § 19–5–211 lists certain effects that "shall" result from a final decree of adoption. There is no indication from the statutory context that these requirements should be read as anything other than the mandatory

effects of the entry of a decree. *See Barela v. Beye,* 916 P.2d 668 (Colo.App.1996)(use of "shall" in statute implies mandatory meaning).

To construe these statutes to permit adoptions such as those attempted here would require that we ignore the mandatory wording of both §§ 19–5–203 and 19–5–211. This we cannot do.

■ We view both sections as excluding from the reach of the adoption statutes all forms of adoption not otherwise expressly permitted. As reflected in § 19–5–211(2), C.R.S. (1995 Cum.Supp.), the general rule is that a decree of adoption terminates the parental rights and duties of a child's natural parents and bestows those rights and duties on the adoptive parent or parents. Section 19–5–211(3), C.R.S. (1995 Cum.Supp.) provides a singular exception to that rule which applies only in cases of "stepparent" adoption, *i.e.,* when the adopting parent is married to the natural parent. Thus, these express statements of limitation must be read to exclude from the statute's reach all other possible exceptions not enumerated.

## B.

Petitioners next argue that § 19–5–203, as it relates to stepparent adoptions, serves only to insure proper notice to a noncustodial parent whose parental rights would be terminated by a stepparent adoption and that the statute cannot be read to prohibit other forms of adoption not enumerated. Reading this section together with other statutes relating to adoption, we disagree.

■ The sections of the Children's Code must be read together in order to effectuate the legislative intent and to give consistent, harmonious, and sensible effect to all their parts. *R.E.N. v. City of Colorado Springs,* 823 P.2d 1359 (Colo.1992). Thus, the statutes governing adoption must be construed together. *In re Petition of R.H.N.,* 710 P.2d 482 (Colo.1985).

■ Words and phrases that have acquired a particular meaning by legislative definition must be construed accordingly. *Resolution Trust Corp. v. Heiserman, supra.*

Preliminarily, we note that when read together, §§ 19–5–203 and 19–5–211, as relevant here, contemplate two types of adoptions.

The first is an adoption in which the rights of the parents are terminated by the court or are relinquished by the parents (or by the child's guardian if the parents are deceased). In such a situation, the final decree of adoption has the effect of divesting the child's natural parents of all legal rights and obligations with respect to the child. Section 19–5–211(2).

The other situation is a "stepparent adoption." A stepparent adoption constitutes the only exception to the general rule that an adoption divests both of the adoptee's parents of all legal rights and duties relating to the adoptee. This exception applies *only* when a custodial parent is married to the adopting stepparent. See § 19–5–211(3).

The requirement that a stepparent must be married to the custodial parent in order for a stepparent adoption to proceed is amplified by § 19–1–103(26), C.R.S. (1995 Cum. Supp.), which defines the word "stepparent" for purposes of the Children's Code, § 19–1–101, et seq., C.R.S. (1995 Cum.Supp.) as "a person who is married to a parent of a child, but who has not adopted the child."

Petitioners rely on § 19–1–103(25), C.R.S. (1995 Cum.Supp.), which provides a definition for the term "spousal equivalent" as "a person who is in a family-type living arrangement with a parent *and* who would be a stepparent if married to that parent." (emphasis added) Several sections of the Children's Code contain references to the rights and duties of spousal equivalents. *See* §§ 19–1–111, 19–1–114, 19–2–306, 19–3–303, 19–3–305, C.R.S. (1995 Cum.Supp.). These references were added during the 1987 recodification of the Children's Code. *See* Colo. Sess. Laws 1987, ch. 138 at 695–823. However, that recodification contains no mention of the term "spousal equivalent" in the statutes relating to adoption and, thus, we place no reliance on the concept of "spousal equivalent" in our analysis.

As noted above, both §§ 19–5–203 and 19–5–211 are phrased in mandatory exclusive language. Thus, a trial court has no statutory authorization to permit an adoption to proceed except in accordance with the statutes.

Here, each adoption petition included a brief statement that neither petitioner was "terminating or relinquishing custody" of her natural child. Similarly, both petitioners filed with their respective petitions nearly identical documents that were captioned, "CONSENT TO ADOPTION BY PARENT NOT RELINQUISHING." In these documents, each petitioner authorized the adoption of her natural child by the other, but added: "By this consent I do not intend to terminate or relinquish my legal rights or parental obligations concerning [my natural child]...."

■ Petitioners' requests for adoption were governed by the facts stated in their petitions for adoption. *See* §§ 19–5–208 and 19–5–210, C.R.S. (1995 Cum.Supp.). Thus, because the petitioners were not married to each other, neither could consent to the adoption of her child by the other petitioner without terminating her parent-child relationship with her own natural child.

■ Therefore, reading the plain language of § 19–5–203 in harmony with other statutes relating to adoption, we conclude that the district court was correct in determining that the children were not available for adoption. Moreover, we cannot infer, as petitioners would have us do, the implied exception they seek. For us to do so would be tantamount to judicial legislation. *See Golden Animal Hospital v. Horton*, 897 P.2d 833 (Colo.1995). Courts should not interpret a law to mean what it does not express. *People ex rel. Marks v. District Court*, 161 Colo. 14, 420 P.2d 236 (1966).

While we recognize petitioners' objective, we conclude that the petitions failed to state facts that would authorize the district court to promulgate adoption decrees under either of the two methods of adoption contemplated by §§ 19–5–203 and 19–5–211. Thus, the trial court was correct in dismissing the petitions. *See Johnson v. Black, supra; see also* C.R.C.P. 12(b)(5)(dismissal of complaint ap-

propriate when plaintiff fails to state a claim upon which relief can be granted).

## II.

■ Petitioners next contend that the district court erred in dismissing the petitions without holding a hearing to determine whether the adoptions were in the best interests of the children. Again, we disagree.

### A.

Section 19–5–200.2, C.R.S. (1995 Cum. Supp.) is the legislative declaration governing the adoption statutes. It provides:

Notwithstanding any other provisions of this title to the contrary, it is the intent of the general assembly that *the court shall protect and promote the best interests of the children* who are the subjects of proceedings held pursuant to this part 2 while giving due regard to the interests of any other individuals affected. (emphasis added)

Petitioners argue that this section should be construed as overriding the effect of other adoption statutes. However, such a reading would render the other adoption statutes in the Children's Code mere surplusage.

Petitioners also rely on the language in *In re Petition of R.H.N., supra,* and *In re Petition of E.R.S v. O.D.A.,* 779 P.2d 844 (Colo. 1989), for the proposition that the district court must determine whether an adoption would be in the child's best interests *before* determining whether the child is available for adoption.

However, in both of those cases, the issue whether the children were available for adoption was dependent on the resolution of disputed factual questions and, thus, necessitated a hearing. In *In re Petition of R.H.N., supra,* the children's natural father, in objecting to a stepparent adoption by the natural mother's new husband, asserted that his past failure to support the children was justified. Similarly, in *In re Petition of E.R.S. v. O.D.A., supra,* a child's natural parent refused to consent to a stepparent adoption, giving rise to factual questions, the resolution of which required a hearing.

Here, in contrast, the adoption petitions were unchallenged. The natural fathers of both children were anonymous sperm donors who had no rights or duties relating to the children. *See* § 19–4–106(2), C.R.S. (1995 Cum.Supp.). Thus, there were no factual questions such as parental abandonment or failure to support that would have necessitated a hearing.

Instead, taking the facts stated in the petitions as true, the district court determined that the children could not be placed in any of the categories that would render them available for adoption within the meaning of § 19–5–203. Under such circumstances, the threshold question whether the adoptions were in the best interests of the children was rendered moot by the district court's correct conclusion that the adoptions could not proceed under the statutes.

### B.

■ Likewise, we reject petitioners' contention that the absence of a hearing on the adoption petitions denied the children's right to due process.

■ Due process requires notice and an opportunity to be heard before a person may be deprived of a protected liberty or property interest. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ Natural parents have a fundamental liberty interest in the care, custody, and management of their children. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *see also In re Custody of C.C.R.S.,* 892 P.2d 246 (Colo.1995) (fn.3). Even if we assume, without deciding, that a child has a corresponding liberty interest in care from his or her natural parent, we find no indication of such an interest regarding the relationship between a child and a potential adoptive parent.

Similarly, we find no recognized property interest at stake here. While § 19–5–210, C.R.S. (1995 Cum.Supp.) requires a hearing for adoption proceedings, it does not change the requirement that the child be available for adoption before a decree of adoption can be entered. *See* § 19–5–201. In order to

establish that they had a property interest in proceeding with the adoptions, petitioners had to show that they had some legitimate claim of entitlement to the adoptions. As noted above, the petitions and supporting documents filed by petitioners clearly established that the children were unavailable for adoption. Thus, there existed no statutory basis for any claimed entitlement to proceed with the adoptions. *Cf. Colorado Compensation Insurance Authority v. Nofio,* 886 P.2d 714 (Colo.1994).

### III.

■ Petitioners finally contend that the district court's dismissal of the adoption petitions violated the children's constitutional rights to equal protection. Assuming that petitioners have standing to raise this issue, we disagree.

■ The threshold question in an equal protection challenge is whether the legislation results in dissimilar treatment of similarly situated individuals. *Duran v. Industrial Claim Appeals Office,* 883 P.2d 477 (Colo. 1994).

■ If this question is answered in the affirmative, it is necessary to ascertain the standard under which the dissimilar treatment is to be analyzed. The level of judicial scrutiny in an equal protection challenge varies with the character of the classification and the nature of the rights affected. *Harris v. The Ark,* 810 P.2d 226 (Colo.1991).

■ Under rational basis review, legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. This standard applies to most social and economic legislation. *Harris v. The Ark, supra; see also Romer v. Evans,* — U.S. —, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).

■ Intermediate review requires a showing that the statute in question is sufficiently related to an important governmental interest. It is appropriate for the review of statutes that affect quasi-suspect classes, such as those based on gender or illegitima-

cy. *Willer v. City of Thornton,* 817 P.2d 514 (Colo.1991).

■ Strict scrutiny, the most exacting standard, places the burden on the state to show that the statute is supported by a compelling state interest and that it is narrowly drawn to achieve that interest in the least restrictive manner possible. It is appropriate for the review of laws that discriminate against members of traditionally suspect classes or that infringe on a fundamental constitutional right. *Willer v. City of Thornton, supra.*

### A.

■ Petitioners assert that intermediate scrutiny is the appropriate standard for determining whether the district court's application of § 19–5–203 violated the children's right to equal protection. We disagree.

Petitioners base this assertion on the premise that classifications based on illegitimacy are functionally indistinguishable from the classification created by the district court's application of § 19–5–203 insofar as both classifications distinguish between children based upon the marital status of their parent.

The classification at issue here does not warrant the application of intermediate scrutiny. Illegitimacy is based on a natural parent's marital status at the time of the child's birth and the district court's application focuses on the adoptive parents' marital status at the time of the adoption petition.

■ Intermediate scrutiny is appropriate in the context of illegitimacy classifications because of the injustice associated with burdening the child for the sake of punishing the illicit relations of the parents. *See Clark v. Jeter,* 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). It is rooted in a recognition that: "The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage." *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768, 779 (1972).

Sections 19–5–203 and 19–5–211 do treat children differently for purposes of steppar-

ent adoption based on whether the person seeking the adoption is married to a natural parent of the child. However, there is no indication that this disparate treatment is based on societal condemnation of two unmarried persons jointly engaging in the adoption of a child and we cannot infer such to be the case. *See generally Lyng v. Castillo,* 477 U.S. 635, 106 S.Ct. 2727, 91 L.Ed.2d 527 (1986).

### B.

▪ Thus, we will evaluate petitioners' equal protection challenge under the rational basis standard. And, applying that standard, we reject petitioners' contention.

▪ In a rational basis inquiry, the party challenging a statutory classification bears the burden of proving beyond a reasonable doubt that the statutory classification is unreasonable, or if it is reasonable, that it is unrelated to any legitimate governmental objective. *Dove v. Delgado,* 808 P.2d 1270 (Colo.1991).

▪ When social or economic legislation is at issue, the Equal Protection Clause allows the states wide latitude and the Constitution presumes that the democratic process will provide an adequate resolution of such issues. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

Under the rational basis standard, we must first determine whether there is a legitimate governmental purpose underlying the absence of legislation permitting the "co-parent" adoption proposed by petitioners.

▪ Here, we conclude that the General Assembly may reasonably have determined that the best interests of children and the interests of familial stability would be promoted by limiting adoptions to situations in which: (1) the parents are completely divested of their parental rights and duties or (2) the adopting party is married to the custodial parent. *See In Interest of Angel Lace M.,* 184 Wis.2d 492, 516 N.W.2d 678 (1994). The

determination whether this legislative decision is or is not in keeping with the changing social mores of the public at large is the role of the democratic process and not of the courts.

▪ Our second inquiry under the rational basis test is whether the disparate treatment is rationally related to the governmental objectives of promoting the best interests of children and familial stability. Under the rational basis standard, the General Assembly is not required to choose between addressing all aspects of a situation or none of them, so long as the choice made by that legislative body is rational. *See Duran v. Industrial Claim Appeals Office, supra.*

Here, the means chosen by the General Assembly are sufficiently related to the underlying governmental objectives to withstand rational basis scrutiny. *See In Interest of Angel Lace M., supra.*

The judgment is affirmed.

QUINN, J.*, concurs.

RULAND, J., specially concurs.

Judge RULAND specially concurring.

I concur in the result reached by the majority, but I write separately to express my concern relative to petitioners' equal protection challenge to the adoption statutes.

In my view, we should not address the equal protection claim on the merits because that contention has not been properly presented. *See* § 13–51–110, C.R.S. (1987 Repl. Vol. 6A); *see also Armstrong v. Carman Distributing Co.,* 108 Colo. 223, 115 P.2d 386 (1941). Specifically, the trial court dismissed the petitions on its own motion and prior to any hearing. Hence, neither the petitioners nor the Attorney General have had the opportunity for a hearing to address that claim. And, petitioners do not request that we remand the case for that purpose.

It is also my view, however, that the present statutory scheme for adoption presents

---

* Sitting by Assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1995 Cum.Supp.).

some very troublesome questions that should be addressed in an appropriate proceeding.

By legislative pronouncement, the function of the adoption statutes is to promote and serve the best interests of the children. *See* § 19–1–102(2), C.R.S. (1986 Repl.Vol. 8B). Notwithstanding this laudatory purpose, I find no explanation in the statutory scheme why a potential adoptive parent may not be considered in the context of the best interests of a child simply because a biological parent is not married to the party who seeks to become an adoptive parent. Hence, application of the rational basis test in response to petitioners' equal protection challenge raises significant concerns.

For example, if each biological mother in this case were willing to relinquish her parental rights, the co-petitioner could then proceed with the adoption petition. Conversely, if the mother of one of these children was deceased, upon consent of her child's guardian, the surviving petitioner could pursue a petition to adopt. Section 19–5–203(1)(c), C.R.S. (1995 Cum.Supp.). And, if these petitioners had obtained legal custody of the children out-of-state, an adoption could be approved under the Colorado statute. *See* §§ 19–5–203(1)(h) & 19–5–203(1)(i), C.R.S. (1995 Cum.Supp.). Thus, the rational basis for these obvious discrepancies is not apparent.

On the other hand, if one assumes again that the adoption is in the best interest of each child, then why should the child be deprived of the legal commitments and benefits from a decree which provides a second parent to that child? Obvious benefits would include a legal and enforceable obligation of support, workers' compensation and social security benefits in the event of an untimely death, and other intangible but critically important benefits which accrue from the parent-child relationship. *See* 42 U.S.C. § 416 (1994); § 8–42–114, C.R.S. (1995 Cum. Supp.).

I am especially concerned because of the obvious need in today's society to provide young children with parental guidance. During fiscal 1991, 10,710 petitions in juvenile delinquency were filed in the Colorado courts. *See* Office of the State Court Administrator, *Colorado Judicial Department Annual Report July 1, 1990—June 30, 1991 Statistical Supplement* 39 (1991). In only four years, the filings have increased to 15,-175—an increase of almost 42%. *See* Office of the State Court Administrator, *Colorado Judicial Branch FY 1995 Annual Report July 1, 1990—June 30, 1991* 33 (1995). In this same time frame, the dropout rate from state public high schools has also increased such that in excess of 13,000 students have left the state school system in grades 7 through 12. Colorado Department of Education, *Colorado Graduation Rates for Class of 1995 Annual Dropout Rates for Grades 7–12* 75 (March 1996). In addition, the incidents of child abuse continue to escalate with the primary form of abuse being that of neglect. *See* U.S. Department of Health and Human Services, National Center on Child Abuse and Neglect, *Child Maltreatment 1994: Reports from the States to the National Center on Child Abuse and Neglect* ix & 3–9 (Washington, DC: U.S. Government Printing Office, 1996).

These statistics, standing alone, suggest that good parents who are willing and able to undertake the substantial responsibility and nurturing required in child rearing should receive legal recognition without regard to whether a marriage is involved. Further, I note that statutes in a number of other jurisdictions, including the District of Columbia, have been applied to authorize adoptions under the circumstances here, based upon the critical finding that such was in the best interests of the child. *See In re M.M.D.*, 662 A.2d 837 (D.C.App.1995); *Petition of K.M.*, 274 Ill.App.3d 189, 653 N.E.2d 888, 210 Ill. Dec. 693 (1995)(citing cases from various states in which adoptions permitted and approved). Hence, it is my hope that the issue will be addressed soon either by the General Assembly or in an appropriate court proceeding.