**The ESTATE OF Ginger GRANT, a protected person, Plaintiff–Appellee,**

v.

**STATE of Colorado and the Colorado Department of Transportation, Defendants–Appellants.**

**No. 06CA2514.**

Colorado Court of Appeals, Div. I.

March 6, 2008.

Fogel, Keating, Wagner, Polidori, and, Shafner, P.C., William L. Keating, Denver, Colorado, for Plaintiff–Appellee.

John W. Suthers, Attorney General, Amy C. Colony, Assistant Attorney General, Denver, Colorado, for Defendants–Appellants.

Berenbaum, Weinshienk & Eason, P.C., Larry R. Martinez, Lori F. Welty, Denver, Colorado, for Amicus Curiae Colorado Contractors Association.

Opinion by Chief Judge DAVIDSON.

In this interlocutory appeal brought pursuant to section 24–10–108, C.R.S.2007, of the Colorado Governmental Immunity Act (CGIA), defendants, State of Colorado and the Colorado Department of Transportation (CDOT), seek reversal of the order of the trial court denying their motion to dismiss the complaint filed by plaintiff, the Estate of Ginger Grant, a protected person. We reverse and remand.

## I. Background

The following facts are not disputed. CDOT undertook an upgrade of a highway which, before the new construction, had been a multi-lane divided highway carrying northbound and southbound lanes of traffic separated by a raised median ("pre-upgrade" or "original" highway). Prior to selecting a contractor, CDOT developed a design for the upgrade. The design included initial traffic control plans to be followed during the construction period, which required temporarily rerouting northbound traffic of the highway into southbound lanes with a temporary concrete barrier separating the two directions of traffic. CDOT subsequently accepted a final traffic control plan from its selected contractor, which followed the same rerouting plan, but eliminated most of the temporary concrete barriers dividing traffic.

In August 2004, while the final traffic control plan was in place, Grant was injured when another driver, Donald Clochko, who is not a party to this appeal, made an unlawful U-turn from the southbound to the northbound lanes of traffic, crossing at least one southbound lane in the process. Clochko collided with a motorcycle heading southbound on which Grant was a passenger and she sustained serious injuries.

Plaintiff filed a complaint against defendants and their contractor, who also is not a party to this appeal, asserting that the final traffic control plan enabled Clochko to make an illegal U-turn resulting in Grant's injuries. As relevant here, plaintiff alleged that defendants had negligently maintained the highway by approving the elimination of temporary concrete barriers from their traffic control plan and by failing to require the contractor to employ adequate safety devices and methods of traffic separation during construction.

Defendants filed a motion to dismiss for lack of subject matter jurisdiction, alleging that they are immune under the CGIA. Defendants argued that Grant's injuries, if caused by the absence of barriers on the highway, may have been a design inadequacy, but was not negligent maintenance. The trial court disagreed, determining, under the undisputed facts, that immunity was waived under section 24–10–106(1)(d)(I), C.R.S.2007.

Defendants appeal.

## II. Standard of Review

Whether a claim is one for which immunity has been waived under the CGIA is a question of subject matter jurisdiction and is properly addressed under C.R.C.P. 12(b)(1). *Fogg v. Macaluso*, 892 P.2d 271, 276 (Colo.1995). The plaintiff bears the burden to prove subject matter jurisdiction. *Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176, 1180 (Colo.2001).

The CGIA bars actions in tort against public entities, subject to certain provisions waiving immunity. *Medina v. State*, 35 P.3d 443, 453 (Colo.2001). We broadly construe these provisions waiving immunity in the interest of compensating victims of

governmental negligence, but construe the exceptions to these waivers strictly because the ultimate effect of the exceptions is to grant immunity. *Corsentino v. Cordova,* 4 P.3d 1082, 1086 (Colo.2000).

■ If, as here, the underlying facts are undisputed, the trial court's jurisdictional determination is one of law and is reviewed on a de novo standard. *Medina,* 35 P.3d at 452; *see Trinity Broad., Inc. v. City of Westminster,* 848 P.2d 916, 924 (Colo.1993).

## III. The CGIA

Section 24–10–106(1)(d)(I) provides that a public entity's sovereign immunity is waived in an action seeking compensation for injuries resulting from a "dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic."

"Dangerous condition" is defined as:

[A] physical condition of a facility or the use thereof that constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity ... in constructing or maintaining such facility.... A dangerous condition shall not exist solely because the design of any facility is inadequate.

§ 24–10–103(1), C.R.S.2007.

■ Design means "to conceive or plan out in the mind," *Swieckowski v. City of Fort Collins,* 934 P.2d 1380, 1386 (Colo.1997), and conditions attributable "solely to inadequate, or risky, design" that are intrinsic to the general state of the road as initially constructed may not be considered a dangerous condition and do not waive immunity. *Medina,* 35 P.3d at 457; *see Swieckowski,* 934 P.2d at 1386; *Szymanski v. Dep't of Highways,* 776 P.2d 1124, 1125 (Colo.App.1989); *see also Padilla,* 25 P.3d at 1180–81 (while immunity will not be waived solely because of inadequacy of design, it will be waived if the alleged dangerous condition results from the entity's negligent construction or maintenance of a road or other facility).

■ Maintenance involves keeping a road "in the same general state of being, repair, or efficiency *as initially constructed."* See *Swieckowski,* 934 P.2d at 1385 (emphasis in the original); *accord Medina,* 35 P.3d at 448.

■ The term "maintenance," however, does not include "any duty to upgrade, modernize, modify, or improve the design or construction of a facility." § 24–10–103(2.5), C.R.S.2007; *see Karr v. City & County of Denver,* 677 P.2d 1384, 1386 (Colo.App.1984) (city was not required to modify or improve intersection based on changing use). Thus, when a public entity chooses to upgrade, modernize, modify, or improve the design or construction of a facility, such action does not waive immunity unless the dangerous condition created falls into one of the statutorily defined categories for which a public entity's immunity is waived.

## IV. Design or Maintenance

In *Medina,* the supreme court clarified that the critical distinction between maintenance and design is temporal:

[A]n injury results from a failure to maintain when it is caused by a condition of the road that develops subsequent to the road's initial design. An injury results from inadequate design, in contrast, when it is caused by a condition of the road that inheres in the design and persists to the time of the injury.

35 P.3d at 448.

■ Here, following the *Medina* approach, plaintiff contends that Grant's injuries were caused, not by faulty design, but by a dangerous condition of the pre-upgrade highway that developed subsequent to its initial design. That is, the absence of concrete barriers during the upgrade allegedly caused the pre-upgrade highway to be more dangerous than when it was initially constructed. Like plaintiff, the trial court considered the absence of barriers to constitute a change in the "original condition of the roadway." We disagree.

Most prior cases which address whether a dangerous condition on a roadway resulted from design or maintenance under the CGIA,

including *Medina,* have concerned accidents that have occurred on completed roads. Consistent with *Medina,* the respective analyses have focused on whether the particular injury-causing condition developed during the road's design phase or after the design was completed. *See State v. Moldovan,* 842 P.2d 220, 225 (Colo.1992) (waiving immunity when the state allowed a right-of-way fence, adjacent to the highway, to fall into disrepair, enabling a cow to enter the highway); *Willer v. City of Thornton,* 817 P.2d 514, 518 (Colo. 1991) (refusing to waive immunity when plaintiff's "injuries resulted from the presence of a sharp dip in the roadway—a dip that was part of the initial design and construction of the intersection").

Certainly, here, it is not disputed that the existing, pre-upgrade highway had median barriers and the reconstructed temporary road, at the time of the accident, did not. If the proper question was whether the injury-causing condition developed after the design phase of the original highway, as the trial court reasoned, then plaintiff and the trial court would be correct that a dangerous condition resulting from a maintenance inadequacy had occurred.

But, under the facts here, that is the wrong question. Unlike in *Moldovan* or *Willer,* the injuries here resulted from a condition created on a new version of what had been an existing road. Although the pre-upgrade highway may have been a useable road, when the upgrade commenced and its temporary traffic plan was instituted, the pre-upgrade highway was folded into a new design and no longer existed. Thus, at the time of the accident, the pre-upgrade highway as initially constructed was no longer relevant because the reconstructed temporary road, with its different design, was in place.

We find support for this approach from the supreme court's reasoning in *Swieckowski,* which also concerned a new version of an existing road. There, the plaintiff had argued that the danger in a newly widened road was not solely a result of its design because a pre-existing drainage ditch also contributed to the danger. The court disagreed:

The flaw in this position is that it assumes that the design of the improved roadway exists in the abstract, independent from the existing physical features which are contiguous to the improvement. On the contrary, existing physical features are part of a design of an improved roadway. *Swieckowski,* 934 P.2d at 1386.

Similarly, here, the pre-upgrade highway, like the drainage ditch in *Swieckowski,* was incorporated as a physical feature of the design of the reconstructed temporary road and, ultimately, the upgrade. Therefore, for purposes of determining whether Grant's injuries resulted from improper maintenance or negligent design of the upgrade, contrary to the conclusion of the trial court, the proper inquiry is whether the condition arose during or after the design phase of the reconstructed temporary road, not the pre-upgrade highway.

### A. Grant's Injury Resulted Solely from Design

Here, it is undisputed that before commencing construction of the highway's upgrade, CDOT conceived of and planned the traffic control to be used during the upgrade and, in that planning, determined that concrete barriers were unnecessary. Thus, even though the traffic plan was temporary, it nevertheless was a consequence of CDOT's design, which inhered in the temporary road through that portion of the upgrade process. And even if this design was, in fact, negligent or inadequate, immunity would not be waived. *Medina,* 35 P.3d at 458 ("Some risk is inherent in every design."); *Willer,* 817 P.2d at 518 (the design exclusion to immunity waiver applies to "designs that are 'inadequate' initially and designs which become 'inadequate' over a period of time").

Furthermore, while it is true that improperly maintained or constructed barriers, *see Moldovan,* 842 P.2d at 224–25; *Hallam v. City of Colorado Springs,* 914 P.2d 479, 482–83 (Colo.App.1995), or even the absence of barriers, *Medina,* 35 P.3d at 461, can constitute a dangerous condition that waives immunity if such devices are necessary to restore a road to its initially constructed state, here, as discussed, we are no longer concerned with the original highway. Thus, defendants'

failure to require or install barriers or similar devices during the upgrade did not create a "dangerous condition" within the meaning of the statute because the maintenance duty was not yet triggered. *Id.* at 456 ("[T]he duty to maintain can arise only after the road has been designed and constructed.").

### B. Defendants' Approval of Final Design Eliminating Barriers Does Not Waive Immunity

Plaintiff nevertheless contends that immunity was waived because defendants were negligent by including the use of concrete barriers in their initial design of the upgrade and then subsequently eliminating this use in their final design. Again, we disagree.

 If the state undertakes an upgrade and follows a certain design, any inadequacies that may result from that design do not waive immunity simply because there previously may have been a safer design available. *Medina,* 35 P.3d at 457 ("For the purposes of the CGIA, the state's acceptance of the final design—including the level of risk remaining at the end of the design phase—determines the general state of being, repair, or efficiency of the road as initially constructed."). This is because the choice to adhere to a later design is still part of the design or planning process and, hence, gives rise to the same immunity. *See id.* at 458; *Willer,* 817 P.2d at 518.

Therefore, because the absence of concrete barriers was included in the conception, or plan, for the highway's upgrade, Grant's injuries were attributable solely to design, and thus were not injuries for which the CGIA waives the state's immunity.

The order denying defendants' motion to dismiss is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge STERNBERG * and Judge NEY *, concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and