STATE DEPARTMENT OF HIGHWAYS, Petitioner,

v.

MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, d/b/a US West Communications Inc., Respondent.

No. 93SC249.

Supreme Court of Colorado, En Banc.

March 7, 1994.

Gale Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy Arnold,

Deputy Atty. Gen., Gregg E. Kay, First Asst. Atty. Gen., Simon P. Lipstein, Asst. Atty. Gen., Denver, for petitioner.

Kathleen M. Shildmyer, Denver, for respondent.

Geoffrey T. Wilson, Denver, amicus curiae for Colorado Mun. League.

Timothy J. Flanagan, Denver, amicus curiae for Public Service Co. of Colorado and Utility Notification Center of Colorado.

James R. McCotter, Denver, of counsel for Public Service Co. of Colorado.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to determine whether the Excavation Requirements statute [1] (ERS) creates an implied waiver of sovereign immunity thereby permitting the State of Colorado, or entities of the state, to be held liable for tort damages resulting from negligent excavations by state employees. We hold that the ERS does not create an implied waiver of sovereign immunity, and accordingly, we reverse the decision of the court of appeals.

I

On January 19, 1989, the Colorado Department of Highways (the Department) dispatched a crew to replace a "Keep off the Median" sign located in the median of Highway 285 in Arapahoe County. Though the replacement of the sign did not require digging a new hole, the original sign, which had been damaged, was frozen in the ground, necessitating its removal. The crew used a power auger to remove the original sign as well as some wood shavings, sand and gravel that had accumulated in the hole. Once the existing hole was clear, the new sign was set in place. Prior to this operation, the Department failed to call the Utility Notification Center of Colorado,[2] or any individual utility

---

1. §§ 9–1.5–101 to –105, 3B C.R.S. (1986). The ERS was amended extensively in the last session of the legislature. See Ch. 145, sec. 1, 1993 Colo.Sess.Laws 498, 498–506 (codified as amended at §§ 9–1.5–101 to –106, 3B C.R.S. (1993 Supp.)). The amendments became effective September 1, 1993, and thus are not applicable to this case.

2. The Utility Notification Center of Colorado is composed of a number of underground utility facility owners. The Center operates a one-call notification system that allows excavators to de-

company, as is required by the ERS, to determine the location of underground facilities in the area where the sign replacement was to occur.

On January 29, 1989, Mountain States Telephone and Telegraph Company (US WEST) received reports that customers in the neighborhood where the sign replacement occurred were experiencing problems with their telephone service. US WEST technicians went to the area in an attempt to discover and correct the problem. They determined that the origin of the problem was located directly beneath the replaced sign. Accordingly, they dug down to the phone line and discovered that the post of the highway sign was resting on the conduit which surrounds and protects the telephone cable. They concluded that the conduit had been damaged, that the damage enabled moisture to seep into the telephone cable, and that the moisture was responsible for the disruption of telephone service.

US WEST brought an action, claiming that the Department was negligent because, prior to replacing the highway sign, it failed to determine the location of underground facilities as required by the ERS. The Department moved to dismiss the complaint, claiming that it was immune from liability under the Colorado Governmental Immunity Act[3] (GIA). The trial court denied the motion, holding that although the ERS does not expressly waive the defense of sovereign immunity, the failure of the Department to abide by the terms of the ERS constituted an implied waiver of sovereign immunity. Subsequently, the trial court found that the Department's failure to comply with the requirements of the ERS constituted negligence and awarded damages in the stipulated amount of $10,302.07. The court of appeals affirmed, holding that section 9–1.5–103, 3B C.R.S. (1986), of the ERS, and section 24–10–106.5(1), 10A C.R.S. (1988), of the GIA evince a legislative intent to create a private remedy in damages on behalf of an owner whose underground facilities are damaged due to the state's failure to comply with the ERS. *Mountain States ·Tel. and Tel. Co. v. State*

*Dep't of Highways,* 857 P.2d 502 (Colo.App. 1993). Judge Davidson dissented, interpreting the GIA to bar recovery and concluding that the GIA is the sole source of claims for relief for recovery of damages against the state and public entities. Thus, in her view, unless the GIA contains an explicit exception for the alleged negligent activity of the state, the GIA bars the claim. *Id.* at 506.

## II

US WEST argues that the ERS creates an implied waiver of sovereign immunity. To evaluate this argument, it is necessary to examine both the GIA and the ERS.

In construing a statute, we are guided by familiar principles of statutory construction. Our primary mission is to give effect to the intent of the legislature. *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1076 (Colo.1992). To determine legislative intent, we first look to the plain language of the statute. *Id.* If the statutory terms are clear and unambiguous, judicial scrutiny is complete and there is no need to employ interpretive rules of statutory construction. *Jones v. Cox,* 828 P.2d 218, 221 (Colo.1992).

### A

The sections of the GIA applicable here clearly state the intent of the legislature, thus there is no need to resort to interpretive rules of statutory construction. The GIA bars actions against public entities for any injury that lies, or could lie, in tort. *See* §§ 24–10–106, –108. The declaration of policy for the GIA states:

It is ... recognized that the state, its political subdivisions, and the public employees of such public entities ... *should be liable* for their actions ... *only to such an extent and subject to such conditions as are provided by this article.* The general assembly also recognizes the desirability of including within one article all the circumstances under which the state, any

termine whether underground facilities are present in the area where the excavation is to occur.

3. §§ 24–10–101 to –120, 10A C.R.S. (1988).

of its political subdivisions, or the public employees of such public entities may be liable in actions which lie in tort or could lie in tort. . . .

§ 24–10–102. (emphasis added); *see also* § 24–10–105, 10A C.R.S. (1988) ("It is the intent of this article to cover all actions which lie in tort or could lie in tort. . . ."). Though the legislature has carved out a limited number of exceptions in which the defense of sovereign immunity is waived, none of the exceptions either explicitly or implicitly waives the defense of sovereign immunity for negligent excavations by state employees. *See* § 24–10–106(1) ("A public entity shall be immune from liability . . . except as provided otherwise in this section."). The language of the GIA is clear and unequivocal. It manifests the intent of the legislature to confine the circumstances in which sovereign immunity may be waived to the exceptions specified within the GIA.

### B

It is uncontroverted that the ERS does not expressly waive the defense of sovereign immunity.[4] US WEST, however, argues that because the legislature made the ERS applicable to the state and public entities and because the ERS allows for compensatory damages against those who fail to comply with the statute, that it intended to waive the defense of sovereign immunity for negligent excavations by state employees. We disagree.

There is no question that the ERS is applicable to the state. Indeed, under the ERS, "person" is defined as "any individual, partnership, association, corporation, or joint venture; the state, any political subdivision of the state, or any instrumentality or agency of either; or the legal representative of any of them." § 9–1.5–102(6), 3B C.R.S. (1986). It is also true that the ERS imposes a duty upon "persons" who are involved in excavations. "[N]o person shall make or begin

excavation without first notifying an owner, operator, or association of owners and operators having underground facilities in the area of such excavation." § 9–1.5–103(3)(1), 3B C.R.S. (1986). Finally, in a situation in which a court finds a "person" has damaged underground facilities by repeatedly engaging in negligent excavations, the ERS states that "the court shall . . . take such equitable action as shall be reasonable and appropriate to prevent continuance by such person of such negligent or unsafe operations, which . . . may be in addition to any claim for compensatory damages." § 9–1.5–104, 3B C.R.S. (1986). Beyond these provisions, however, US WEST is unable to identify any other source which might reflect that the legislature intended the ERS to create an implied waiver of sovereign immunity.

The lack of language in the ERS evincing an intent to waive the defense of sovereign immunity, combined with the clear intent of the GIA to limit the circumstances in which the state or public entities will be liable for tort damages, convince us that the ERS does not create an implied waiver of sovereign immunity. This holding is consistent with decisions of this court narrowly construing waivers of sovereign immunity. *See, e.g., Willer v. City of Thornton*, 817 P.2d 514 (Colo.1991); *State v. Hartsough*, 790 P.2d 836 (Colo.1990).

### C

US WEST also argues that the GIA countenances the possibility of an implied waiver of sovereign immunity in statutes other than the GIA because it provides that "[n]othing in this section shall be construed to relieve a public entity of a duty of care expressly imposed under other statutory provision[s]." § 24–10–106.5(1), 10A C.R.S. (1988). This argument overlooks the fact that section 24–10–106.5 does not provide that a breach of a statutorily-imposed duty of care is actionable in tort against the state.

---

4. When we refer to an "express" waiver, we mean a waiver that is explicit and unmistakable in its terms and not left to inference. *See* Black's Law Dictionary 580 (6th ed. 1990) (defining "express").

In other words, while recognizing that the state and public entities are bound by statutory duties, this section does not authorize a tort remedy against the state as does section 24–10–106. *See Board of County Comm'rs v. Bish,* 18 Colo. 474, 475, 33 P. 184, 184 (1893) ("even when a duty is imposed by statute, the county is not liable for failure to perform it, in the absence of express provision, creating such liability"); *cf. Board of County Comm'rs v. HAD Enterprises, Inc.,* 35 Colo. App. 162, 164, 533 P.2d 45, 46 (1974) (if the legislature has not authorized a remedy in a statute, the court cannot supply one).

We do not believe that the imposition of a duty of care alone is sufficient to waive sovereign immunity. Indeed, if a waiver was found, such an interpretation opens the door to claims that any statute that imposes some duty upon public entities may be the basis for an implied waiver of sovereign immunity. This result would thwart the clear intent of the GIA to limit the circumstances in which the state or public entities may be held accountable for tort damages.

This does not mean that section 24–10–106.5(1) is without effect. The ERS allows an injured party to seek injunctive relief against an excavator who breaches the duty imposed by the ERS. § 9–1.5–104. Both US WEST and the Department conceded at oral argument that the GIA would not bar a claim for injunctive relief against the state or its entities.[5] *Cf. Board of Educ. v. Salt Lake County,* 659 P.2d 1030, 1036 (Utah 1983) (governmental immunity not a defense to an equitable claim). We decline to hold, therefore, that the language in section 24–10–106.5(1), recognizing that the state is bound by certain statutory duties, creates an implied waiver of sovereign immunity.[6]

## III

In analyzing the vitality of a claim of sovereign immunity in a situation where the state is alleged to have breached a duty of care imposed by a statute other than the GIA, we believe the court of appeals misapplied *State v. Moldovan,* 842 P.2d 220 (Colo. 1992). In *Moldovan,* the plaintiff was injured when a cow ran onto the highway and collided with the plaintiff's vehicle. The plaintiff brought an action against the state and the highway department alleging that the cow ran onto the highway because the state had failed properly to maintain the fence adjacent to the highway, as required by the Colorado Fence Law.[7] The state claimed it was immune from liability under the GIA. This court recognized that the Colorado Fence Law did impose a duty on the state to maintain right-of-way fences adjacent to Colorado highways and that the state could be liable in damages for breaching this statutory duty. However, in determining that the plaintiff had a private cause of action under the Fence Law, this court first determined that the cause of action fell into one of the express exceptions to sovereign immunity. "In our view, Moldovan's claim qualifies as a claim for injuries resulting from a dangerous condition of a public highway ... for which sovereign immunity is expressly waived...." *Id.* at 225. Thus, *Moldovan* stands only for the proposition that if another statute is involved, and it imposes a duty upon the state, the state could be liable for breach of that duty, but only if first it is determined that sovereign immunity is waived for the activity in question.

Accordingly, we find that US WEST's claim is barred by the doctrine of sovereign immunity; therefore, we reverse the court of appeals and dismiss the case for lack of jurisdiction over the subject matter.[8]

5. US WEST did not seek injunctive relief in this case.

6. Though we also granted certiorari on "[w]hether the court of appeals erred in holding that section 9–1.5–103, 3B C.R.S. (1986), of the Excavation Requirements statute, and section 24–10–106.5(1), 10A C.R.S. (1988), of the Governmental Immunity Act, create a private remedy for damages under general negligence principles in owners of underground facilities damaged as a result of noncompliance with the ERS," this issue is now moot as we have determined that the ERS does not create an implied waiver of sovereign immunity, thus there can be no private remedy for damages based on the Department's breach of the ERS. *See Mountain States Tel. and Tel. Co. v. State Dep't of Highways,* 857 P.2d 502, 507 (Colo.App.1993) (Davidson, J., dissenting).

7. §§ 35–46–101 to –114, 14 C.R.S. (1984).

8. In *Trinity Broadcasting v. Westminster,* 848 P.2d 916, 925 (Colo.1993), we noted that if it is

clear that the trial court does not have subject matter jurisdiction, we "could apply C.R.C.P. 12(b)(1) to the record" and "no remand would be necessary."