2012 COA 112

**Alexa Rae LOVELAND, a minor, by and through her parents and next friends, Randy LOVELAND and Mary Nicole Loveland; Randy Loveland, individually; and Mary Nicole Loveland, individually, Plaintiffs–Appellants,**

v.

**ST. VRAIN VALLEY SCHOOL DISTRICT RE–1J and Cathy O'Donnell, Defendants–Appellees.**

No. 11CA1019.

Colorado Court of Appeals, Div. III.

July 5, 2012.

Purvis Gray, LLP, Michael J. Thomson, Boulder, Colorado, for Plaintiffs–Appellants.

Senter Goldfarb & Rice, L.L.C., Sonja S. McKenzie, Gillian M. Fahlsing, Cody M. Barela, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge ROY.

¶ 1 In this governmental immunity case, plaintiffs, Randy Loveland and Mary Nicole Loveland, individually and as parents and next friends of Alexa Rae Loveland, a minor, appeal the trial court's order dismissing all claims against defendants, St. Vrain Valley

School District RE–1J (school district) and Cathy O'Donnell under C.R.C.P. 12(b)(1). We affirm in part, reverse in part, and remand with directions.

## I. Background

¶ 2 During lunch recess on November 21, 2008, the minor, then a nine-year-old elementary student, suffered a compound fracture of her left arm when she fell from a playground apparatus installed on the grounds of her elementary school. The minor, through her parents and next friends, brought suit against defendants, alleging claims of premises liability and negligent supervision.

¶ 3 The common law doctrine of sovereign immunity no longer pertains as it was abrogated by our supreme court in a 1971 trilogy of cases. *See Evans v. Board of County Comm'rs,* 174 Colo. 97, 482 P.2d 968 (1971); *Flournoy v. School Dist. No. 1,* 174 Colo. 110, 482 P.2d 966 (1971); *Proffitt v. State,* 174 Colo. 113, 482 P.2d 965 (1971). In *Evans,* the court recognized that the General Assembly could reestablish governmental immunity by statute and provided that the holding would apply to the parties but would be prospective only as to others and apply to causes of action arising after June 30, 1972. *Evans,* 174 Colo. at 105, 482 P.2d at 972.

¶ 4 The General Assembly responded to *Evans* by enacting the Colorado Governmental Immunity Act (the Act), §§ 24–10–101 to –120, C.R.S.2011, which provides immunity for public entities for any actions that lie, or could lie, in tort—but then waives immunity in certain specific instances, effective July 1, 1972. *See* § 24–10–106, C.R.S.2011; Ch. 323, sec. 20, 1971 Colo. Sess. Laws 1218. Among those waivers is the public facility waiver at issue here which states, in pertinent part:

> Sovereign immunity is waived by a public entity in an action for injuries resulting from ... [a] *dangerous condition* of *any* public hospital, jail, *public facility located in any park or recreation area maintained by a public entity,* or public water, gas, sanitation, electrical, power, or swimming facility.

---

1. Churchich Recreation LLC installed the apparatus, which was manufactured by Miracle Recreation Equip. Co. Both entities have been

Section 24–10–106(1)(e), C.R.S.2011 (emphasis added).

 ¶ 5 Whether a public entity is immune from suit under the Act is a question of subject matter jurisdiction that must be determined pursuant to C.R.C.P. 12(b)(1). *Fogg v. Macaluso,* 892 P.2d 271, 280 (Colo. 1995); *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 924–25 (Colo.1993).

¶ 6 Defendants filed a C.R.C.P. 12(b)(1) motion arguing that the court lacked subject matter jurisdiction on the basis that all defendants were immune from liability under the Act. The trial court granted the motion concluding that the playground apparatus did not constitute a "public facility" under the Act. The trial court further concluded that plaintiffs' claim of negligent supervision was barred by the Act. This appeal followed.

## II. Preliminary Matters

¶ 7 At the outset, it is undisputed that: (1) the school district is a public entity within the meaning of the Act, *see* § 24–10–103(5), C.R.S.2011; (2) the school district owns, operates, and maintains the building and grounds of a school known as Black Rock Elementary School where the minor was injured; (3) the school playground is a "recreation area"; and (4) the minor was a student at the school and was injured while playing on an apparatus installed on the school grounds for the use of children known as a "track rider" or "zip line" (the apparatus).[1]

¶ 8 The apparatus is a freestanding device, consisting of an inclined, inverted "U" shaped pipe with a handle attached to an interior cable or track protruding through a slot on the underside of the pipe. A child grabs the handle, lifts his or her feet from the ground, slides down the incline, and then releases his or her grip. If the child loses his or her grip enroute, he or she can fall to the ground—which is apparently what happened here.

named by the school district as non-parties at fault.

### III. Public Facility

¶ 9 Plaintiffs contend that the trial court erred in concluding that the apparatus is not a "public facility" under section 24–10–106(1)(e). We agree.

### A. Standard of Review

■ ¶ 10 Normally, immunity determinations raised pursuant to C.R.C.P. 12(b)(1) are reviewed under the clear error standard as they are essentially factual. *See Corsentino v. Cordova,* 4 P.3d 1082, 1087 (Colo.2000); *Ramos v. City of Pueblo,* 28 P.3d 979, 980 (Colo.App.2001). In this case, however, we review the trial court's ruling de novo because it presents an issue of statutory construction. *Bostelman v. People,* 162 P.3d 686, 689 (Colo.2007) (stating that statutory interpretation is a question of law which is reviewed de novo); *Corsentino,* 4 P.3d at 1087 (holding that the trial court's immunity determination pursuant to C.R.C.P. 12(b)(1) is reviewed de novo when the court's ruling involves statutory interpretation).

■ ¶ 11 Because it is in abrogation of the common law, the grant of immunity is to be strictly construed. *Springer v. City & Cnty. of Denver,* 13 P.3d 794, 798 (Colo.2000). As a logical corollary, the waiver provisions are to be interpreted deferentially in favor of injured persons. *Walton v. State,* 968 P.2d 636, 643 (Colo.1998); *Farina v. City & Cnty. of Denver,* 940 P.2d 1004, 1006 (Colo.App. 1996).

### B. Analysis

¶ 12 As pertinent here, the Act's general grant of immunity is waived for injuries resulting from "[a] dangerous condition of any ... public facility located in any park or recreation area maintained by a public entity." § 24–10–106(1)(e). The term "public facility" is not defined in the Act, nor is there existing authority considering whether playground equipment located on the grounds of a public school is a "public facility."

¶ 13 The trial court reasoned that because the Act waives immunity in specific instances and

group[s] the operation of motor vehicles under subsection (1)(a); the operation of public hospitals, correctional facilities and jails under subsection (1)(b); dangerous conditions in public buildings under subsection (1)(c); dangerous conditions on highways, roads, and streets under subsection (1)(d); and the operation of public utility facilities and swimming facilities under subsection (1)(f); the court cannot find that playground equipment was intended to be included in the group of dangerous conditions in public hospitals, jails, or public utility facilities and swimming facilities and other public facilities located in a park or recreation area set forth under [section 24–10–106(1)(e)]. Had the General Assembly intended to include recreational equipment in any of its category groupings, it would have done so.... Had the General Assembly intended to include recreational equipment in the category of public facilities, it would have done so.... The court finds that the playground equipment is not a public facility.

We disagree with the trial court.

### C. Rules of Construction

■ ¶ 14 "Legislative intent is the polestar of statutory construction." *Schubert v. People,* 698 P.2d 788, 793 (Colo.1985). Therefore, when construing a statute, courts must ascertain and give effect to the intent of the General Assembly. *See Springer,* 13 P.3d at 799. To determine legislative intent, we look first to the statutory language and give it its plain and ordinary meaning. *See Fogg,* 892 P.2d at 274. If courts can give effect to the ordinary meaning of words used by the legislature, the statute should be construed as written, giving full effect to the words chosen, as it is presumed that the General Assembly meant what it clearly said. *See Askew v. Indus. Claim Appeals Office,* 927 P.2d 1333, 1337 (Colo.1996). However, where the words chosen by the legislature are capable of two or more constructions or their intended scope is unclear, a court may apply other rules of statutory construction and look to legislative history to ascertain intent. *See Griffin v. S.W. Devanney & Co.,* 775 P.2d 555, 559 (Colo.1989); *see also* § 2–4–203(1)(c), C.R.S.2011 (authorizing courts

construing ambiguous statutes to consider legislative history).

### D. Ambiguity

¶ 15 We are of the opinion the phrase "public facility" is ambiguous, that is, it is subject to more than one interpretation. For instance, the trial court concluded that a facility is a place or building, and does not include stand-alone equipment or machinery. Defendants echo this contention, suggesting that because the other facilities listed in section 24–10–106(1)(e)—public hospitals, jails, utilities, and swimming facilities—are large buildings or structures, the General Assembly contemplated a "public facility located in a park or recreational area" to be similar in size and scope. On the other hand, it is also reasonable to assume that " 'facility' is a more comprehensive term than the word 'building' and that [the General Assembly] intended to use the words selectively rather than interchangeably." *Longbottom v. State Bd. of Community Colleges & Occupational Educ.*, 872 P.2d 1253, 1256 (Colo.App.1993) (Hume, J., dissenting). Accordingly, we look to other rules of statutory construction and legislative history to ascertain intent.

### E. "Public"

¶ 16 Here, it is undisputed that the apparatus is owned, operated, and maintained by the school district—a public entity within the purview of the Act. *See* § 24–10–103(5).

¶ 17 Further, the common meaning of the term "public," as used in the phrase "public place," is "a place accessible or visible to all members of the community." *Rosales v. City & Cnty. of Denver*, 89 P.3d 507, 509 (Colo.App.2004) (quoting *Webster's Third New International Dictionary* 1836 (1986)). In *Farina v. City & County of Denver*, a division of this court, in determining whether an airport medical clinic was a "public hospital" under the Act, stated that "so long as the facility is owned and operated by the public entity, is devoted to a public purpose, and is beneficial to a substantial segment of the public, it is a *public* facility" under the Act. 940 P.2d at 1008 (emphasis added). In the same year, our supreme court stated that "the determinative factor in defining a public facility is whether the facility is operated 'for the benefit of the public.' " *City & County of Denver v. Gallegos*, 916 P.2d 509, 511 (Colo. 1996), *disapproved of on other grounds by Corsentino*, 4 P.3d at 1086.

¶ 18 Here, the record shows that the apparatus is beneficial to a substantial segment of the community, or, the population reliant on public education as a means of fostering their children's education and development. Moreover, as a part of a public school's outdoor recreation area, the apparatus is visible to all and is in no way secluded from the community at large. *See Rosales*, 89 P.3d at 509.

¶ 19 We therefore conclude, on these facts, that the apparatus is "public" for purposes of waiving immunity under the Act.

### F. "Facility"

¶ 20 In *Rosales*, a division of this court—holding that natural features, such as trees, are not public facilities—noted that the "common meaning of 'facility' is 'something (as a hospital, machinery, plumbing) that is built, constructed, installed or established to perform some particular function or to serve or facilitate some particular end.' " *Rosales*, 89 P.3d at 509 (quoting *Webster's*, at 812–13).

¶ 21 In *Anderson v. Hyland Hills Park & Recreation District*, 119 P.3d 533 (Colo.App. 2004), a division of this court concluded that a water-themed adventure ride was a "swimming *facility* " under section 24–10–106(1)(e). *Id.* at 535 (emphasis added). The division first undertook a separate analysis to conclude that the ride was indeed used for "swimming." Thereafter, the division agreed with the trial court's finding that the ride, in which participants rode a "plastic, wheeled sled down a 120–foot track," was a "facility" under section 24–10–106(1)(e). *Id.*

¶ 22 Here, the apparatus (1) is man-made, (2) is a mechanical device, and (3) was installed on a playground for the purpose and function of providing recreation for school children. Therefore, we conclude that the apparatus is a "facility" for purposes of section 24–10–106(1)(e).

### G. Legislative History

¶ 23 Our conclusion that the apparatus is a "public facility" under section 24–10–106(1)(e) is bolstered by its legislative history.

¶ 24 In 1968, the General Assembly appointed a special committee to commission "a study of the problem of governmental civil immunity" in Colorado with the goal "of developing comprehensive legislation to define and limit the areas of immunity." Colorado Legislative Council, *Report to the Colorado General Assembly: Governmental Liability in Colorado,* Research Publication No. 134, at 126 (1968) (the Report).[2]

¶ 25 The Report, along with corresponding policy justifications, contains proposed legislation. *Id.* at xxvii-lii, 136. The General Assembly, in 1971, adopted the legislation proposed in the Report as the first version of the Act which included the facility waiver stating: "[a] dangerous condition of any public facility ... located in parks or recreation areas and maintained by such public entity." *Id.* at xxx; *see* Ch. 323, sec. 1, § 130–11–6(1)(e), 1971 Colo. Sess. Laws 1206; *see also* § 24–10–106(1)(e). The Report also includes a policy rationale defining the scope and intended meaning of the public facility waiver provision. As relevant here, the Report uses playground equipment to illustrate the type of public facility with respect to which sovereign immunity is waived, stating:

> With respect to the liability of public entities for injuries caused by dangerous conditions in parks, recreational facilities, etc The committee concluded that a distinction should be made between (1) injuries caused by negligence in the construction, maintenance, failure to maintain, etc. of artificial, man-made objects (*swing sets,* buildings, etc.) and (2) injuries caused by the natural conditions of a park (the Flat Irons in Boulder or the Red Rocks west of Denver). In other words, ordinary negligence is sufficient [sic] to impose liability

for injuries caused by the dangerous condition of artificial objects.

Report, at 140 (emphasis added).

¶ 26 It is, therefore, clear that the General Assembly adopted the public facility waiver provision with an understanding that injuries resulting from dangerous conditions on artificial playground equipment—or by its example, swing sets—were to be among the circumstances in which sovereign immunity is waived.

¶ 27 Accordingly, we reverse the portion of the trial court's order concluding that the playground apparatus did not constitute a "public facility" within the meaning of the Act and remand with directions stated below.

### IV. Negligent Supervision

¶ 28 Plaintiffs also argue that the trial court erred in concluding the tort of negligent supervision is not a recognized exception to sovereign immunity under the Act. We disagree.

¶ 29 As noted above, the Act bars actions against public entities for any injury that lies, or could lie, in tort—unless the injury is among those for which immunity has been expressly waived. *See* §§ 24–10–105, 24–10–106(1), C.R.S.2011. In the declaration of policy, the Act provides, in relevant part:

> The general assembly also recognizes the desirability of including within one article *all* the circumstances under which the state, any of its political subdivisions, or the public employees of such public entities may be liable in actions which lie in tort or could lie in tort....

§ 24–10–102, C.R.S.2011 (emphasis added).

¶ 30 This language and other provisions of the Act have been interpreted to manifest a clear and unequivocal intent by the General Assembly to confine the circumstances in which sovereign immunity may be waived to the precise exceptions specified therein. *See State Dep't of Highways v.*

---

2. Our supreme court and several divisions of this court have relied upon the committee's Report to aid in deciphering the General Assembly's intent regarding the situations in which sovereign immunity is to be waived under the Act. *See, e.g., State v. Defoor,* 824 P.2d 783, 788 (Colo.1992) (citing the Report to discern the intent of the

General Assembly with respect to government liability insurance under the Act); *Lauck v. E–470 Pub. Highway Auth.,* 187 P.3d 1148, 1151–52 (Colo.App.2008) (citing the Report to discern the intent of the General Assembly regarding which public roads are subject to the waiver of immunity under the Act).

*Mountain States Telephone & Telegraph Co.,* 869 P.2d 1289, 1291 (Colo.1994). Hence, even if a common law duty is imposed upon the state, it is liable for a breach of that duty "only if first it is determined that sovereign immunity is waived for the activity in question." *Id.* at 1292.

¶ 31 In *Destefano v. Grabrian,* 763 P.2d 275 (Colo.1988), Colorado first recognized the tort of negligent supervision, imposing a duty on employers to prevent foreseeable harm to third parties caused by the conduct of an employee. *Id.* at 287–88 (adopting the doctrine of negligent supervision and discussing its relation to principles of agency). To establish liability under a negligent supervision theory, "the plaintiff must prove that the employer has a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm." *Keller v. Koca,* 111 P.3d 445, 448 (Colo.2005).

¶ 32 Here, all parties seemingly agree, and we concur, that injuries resulting from negligent supervision are not among the tortious injuries for which sovereign immunity has been expressly waived under the Act. *See* § 24–10–106(1)(a)–(h). Plaintiffs maintain, however, that section 24–10–106(1)(e) impliedly waives immunity for a claim of negligent supervision because defendants' failure to supervise the playground created a dangerous condition that led to injury. We do not accept plaintiffs' contention, as our cases make plain that, absent specific language unambiguously waiving sovereign immunity, implied waiver is disallowed by the express terms of the Act. *Lopez v. Regional Transp. Dist.,* 899 P.2d 254, 256 (Colo.App.1994) (stating that "in the absence of specific language ... no such waiver may be implied" under the Act), *aff'd in part and rev'd in part,* 916 P.2d 1187 (Colo.1996); *see also Mountain States Tel.,* 869 P.2d at 1291 ("The language of the [Act] is clear and unequivocal.... [It] confine[s] the circumstances in which sovereign immunity may be waived to the exceptions *specified* within the [Act].") (emphasis added); *Shandy v. Lunceford,* 886 P.2d 319, 321 (Colo.App.1994) (noting that valid waiver under the Act must conform "to the express requirements" of the Act).

¶ 33 Accordingly, the trial court did not err in concluding that plaintiffs' negligent supervision claim was barred by the Act.

## V. Conclusion

¶ 34 The part of the trial court's order concluding that the playground apparatus is not a public facility is reversed, and the case is remanded for further proceedings on plaintiffs' claim that the injuries resulted from a dangerous condition of a public facility located in a park or recreation area maintained by a public entity.

¶ 35 The order is otherwise affirmed.

Judge TERRY and Judge GABRIEL concur.