Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 22, 2017

**2017 CO 54**

**No. 15SC933, <u>St. Vrain Valley Sch. Dist. RE-1J v. Loveland</u>—Governmental Immunity—Waiver of Governmental Immunity—Dangerous Condition.**

In this case, the supreme court considers the Colorado Governmental Immunity Act's "recreation-area waiver," which deprives a public entity of immunity in an action for injuries resulting from a dangerous condition of a public facility located in a recreation area.  Specifically, the supreme court examines the meaning of "dangerous condition" under the recreation-area waiver.  The supreme court holds that a non-negligently constructed and maintained piece of playground equipment cannot be a "dangerous condition" under the waiver.  Given this holding, the facts respondents allege cannot show that a "dangerous condition" existed in this case.  The supreme court therefore concludes that the recreation-area waiver does not apply and the petitioner retains its immunity from suit.  The supreme court reverses the judgment of the court of appeals and remands to that court to reinstate the trial court's order.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

## 2017 CO 54

---

### Supreme Court Case No. 15SC933
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1888

---

### Petitioner:

St. Vrain Valley School District RE-1J,

v.

### Respondents:

Alexa Rae Loveland, a minor, by and through her parents and next friends, Randy Loveland and Mary Nicole Loveland; and Randy Loveland and Mary Nicole Loveland, individually.

---

### Judgment Reversed
*en banc*
May 22, 2017

---

**Attorneys for Petitioner:**
Senter Goldfarb & Rice, LLC
Thomas S. Rice
Courtney B. Kramer
  *Denver, Colorado*

**Attorneys for Respondents:**
Purvis Gray Thomson, LLP
Michael J. Thomson
  *Boulder, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1　　This is the latest chapter in the legal saga of a young girl who was seriously injured on her elementary school playground in late 2008. Alexa Rae Loveland, then nine years old, fell while using the playground's zip line apparatus and severely fractured her wrist and forearm. Alexa and her parents filed a tort action against the school district, seeking damages for Alexa's injuries. Because the Colorado legislature has limited when public entities such as the school district may be sued, we are asked to determine whether the Lovelands' lawsuit falls within one of the limited exceptions to sovereign immunity under the Colorado Governmental Immunity Act ("CGIA," or "the Act"), §§ 24-10-101 to -120, C.R.S. (2016). Specifically, Alexa and her parents invoke the recreation-area waiver, which deprives a public entity of immunity in an action for injuries resulting from a dangerous condition of a public facility located in a recreation area.

¶2　　We hold that a non-negligently constructed and maintained piece of playground equipment cannot be a "dangerous condition" under the CGIA's recreation-area waiver. Because the facts the Lovelands allege cannot satisfy the dangerous-condition requirement, the recreation-area waiver does not apply, and the District's immunity under the CGIA remains intact. The trial court was correct to conclude that it lacked jurisdiction over the Lovelands' tort action and to grant the District's motion to dismiss. Accordingly, we reverse the judgment of the court of appeals, and we remand to that court to reinstate the trial court's order dismissing the complaint in this case.

## I. Facts and Procedural History

¶3 In 2008, then-nine-year-old Alexa Rae Loveland fell while using the zip line apparatus on her school playground and fractured her wrist and right forearm. The zip line was a piece of inclined pipe that ran between two sets of vertical poles secured in the ground. The inclined pipe had a handle attached to an interior track, and to use the zip line, a child would climb up a short ladder, stand on an elevated platform to grab the handle, and propel him- or herself forward down the zip line track, releasing the handle and jumping to the ground at the end of the track. There was also a sign that warned "Adult Supervision Required."

¶4 This is not the first time we have considered issues related to this case. After Alexa's injury, she and her parents ("the Lovelands") filed a tort action against the St. Vrain Valley School District ("the District"). The District moved to dismiss the action, arguing the trial court lacked subject matter jurisdiction because public school districts are immune from tort liability under the CGIA. The District acknowledged that section 24-10-106(1)(e), referred to as the recreation-area waiver, deprives a government entity of immunity if an injury results from a "dangerous condition of any . . . public facility located in any park or recreation area maintained by a public entity." But the District argued that the Lovelands could not establish the elements of the recreation-area waiver in this case for a number of reasons, one of which was that the zip line was not a public facility. The Lovelands countered that the zip line was in fact a public facility and a dangerous condition of a public facility. The trial court agreed with the District. It

3

found that the zip line was not a public facility, and therefore that the recreation-area waiver did not apply. The court granted the District's motion to dismiss.

¶5    The Lovelands filed an interlocutory appeal. The court of appeals reversed the trial court's ruling and held that the zip line was a public facility. See Loveland ex rel. Loveland v. St. Vrain Valley Sch. Dist. RE-1J, 2012 COA 112, ¶¶ 19, 22, 27, 328 P.3d 228, 232–33.

¶6    The District sought this court's review of the court of appeals' decision. We granted certiorari and affirmed on different grounds. St. Vrain Valley Sch. Dist. RE-1J v. A.R.L. ex rel. Loveland ("St. Vrain I"), 2014 CO 33, ¶ 26, 325 P.3d 1014, 1023. We held that "an individual zip line apparatus on a public playground does not qualify as a 'public facility.'" Id. at ¶ 18, 325 P.3d at 1020. Rather, the entire playground, considered as a whole, can qualify as a public facility. Id. We also concluded that the public facility (the playground) was located in a recreation area, as required for the waiver to apply. Id. at ¶ 34, 325 P.3d at 1024. We remanded to the trial court for additional fact-finding on the remaining requirements of the recreation-area waiver, including whether there was a dangerous condition. Id. at ¶ 37; see also id. at ¶ 18 n.8, 325 P.3d at 1020 n.8 ("Because the trial court made no findings of fact regarding the dangerous condition requirement, this Court cannot determine whether a dangerous condition existed.").

¶7    On remand, the District again moved to dismiss, arguing that the recreation-area waiver did not apply because the Lovelands failed to establish a dangerous condition on the zip line. Applying the CGIA's definition of "dangerous condition," the trial

4

court granted the District's motion. The court explained that the Lovelands failed to assert what specific physical or structural condition made the zip line a "dangerous condition" as that term is defined in the statute and as distinguished from their general assertion that a zip line is inherently dangerous. The trial court concluded that the Lovelands failed to state a claim sufficient to overcome the District's sovereign immunity.

¶8 The Lovelands appealed, and the court of appeals again reversed. The court of appeals concluded that an individual playground apparatus, such as the zip line in this case, is a physical condition for purposes of the dangerous-condition test. Loveland v. St. Vrain Valley Sch. Dist. RE-1J ("Loveland II"), 2015 COA 138, ¶ 17, __ P.3d __. The court of appeals remanded the case to the trial court for further proceedings. Id. at ¶ 29.

¶9 We granted the District's petition for certiorari review.[1]

## II. Standard of Review and Rules of Statutory Interpretation

¶10 Questions of governmental immunity implicate subject matter jurisdiction and are determined in accordance with C.R.C.P. 12(b)(1). St. Vrain I, ¶ 9, 325 P.3d at 1018.

---

[1] We granted certiorari to review the following issues:

1. Whether the court of appeals erred in broadly defining "dangerous condition" within section 24-10-103(1.3), C.R.S. (2015), of the Colorado Governmental Immunity Act ("CGIA"), to include a playground apparatus with no physical condition, thereby waiving governmental immunity for all playground equipment.
2. Whether the court of appeals erred in holding that the existence of a warning sign from the manufacturer on a piece of playground equipment, in and of itself, renders the equipment an unreasonable risk to the health or safety of the public for purposes of establishing that element of a "dangerous condition" within the CGIA.

Where the facts are undisputed and the only issue is one of statutory interpretation, as is the case here, we review the trial court's ruling de novo. Id.

¶11 Because the CGIA derogates the common law, we must strictly construe its immunity provisions, but broadly construe its provisions waiving that immunity. Springer v. City & Cty. of Denver, 13 P.3d 794, 798 (Colo. 2000). Nevertheless, as with any exercise in statutory interpretation, the focus of our analysis is legislative intent. St. Vrain I, ¶ 10, 325 P.3d at 1019. To determine legislative intent, we must construe the statute as a whole, giving consistent, harmonious, and sensible effect to all of its parts. Daniel v. City of Colo. Springs, 2014 CO 34, ¶ 11, 327 P.3d 891, 894. When the statutory language is unambiguous, we give effect to the statute's plain and ordinary meaning and look no further. Id. at ¶ 12. But if the statutory language is ambiguous, we may resort to aids to statutory construction to determine legislative intent. St. Vrain I, ¶ 11, 325 P.3d at 1019.

## III. Analysis

¶12 We first examine the CGIA provisions governing our analysis. We then assess whether the Lovelands have alleged facts sufficient to establish that the zip line was a dangerous condition, thereby depriving the District of immunity from suit here. The Lovelands argue that the zip line was inherently dangerous; they do not present evidence that the zip line contained a physical defect caused by the District's negligent construction or maintenance. Because such evidence is required to establish the existence of a dangerous condition, we conclude that the Lovelands' claim is insufficient to defeat the District's sovereign immunity.

6

## A. The CGIA and "Dangerous Condition" Under the Recreation-Area Waiver

¶13     The CGIA establishes that a public entity shall be immune from any action for injury which lies in tort or could lie in tort, except as specifically provided elsewhere in the Act. § 24-10-108. The Lovelands seek to invoke the recreation-area waiver, which eliminates governmental immunity for injuries resulting from a "<u>dangerous condition</u> of any . . . public facility located in any park or recreation area maintained by a public entity." § 24-10-106(1)(e) (emphasis added).

¶14     In <u>St. Vrain I</u>, ¶¶ 35–36, 325 P.3d at 1024, this court established that the collection of playground equipment on which Alexa Loveland was injured was a public facility located in a recreation area. But the question remains whether the zip line was a <u>dangerous condition</u> of that public facility.

¶15     The CGIA provides the following definition of "dangerous condition":

> "Dangerous condition" means either a physical condition of a facility or the use thereof that constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity or public employee in constructing or maintaining such facility. For the purposes of this subsection (1.3), a dangerous condition should have been known to exist if it is established that the condition had existed for such a period and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered. A dangerous condition shall not exist solely because the design of any facility is inadequate. The mere existence of wind, water, snow, ice, or temperature shall not, by itself, constitute a dangerous condition.

§ 24-10-103(1.3).

¶16     This court has segregated the CGIA's definition of "dangerous condition" into a four-factor test. The waiver applies if the injuries occurred as a result of: (1) the

physical condition of the public facility or the use thereof; (2) which constitutes an unreasonable risk to the health or safety of the public; (3) which is known to exist or should have been known to exist in the exercise of reasonable care; and (4) which condition is "proximately caused by the negligent act or omission of the public entity in constructing or maintaining the facility."  See Springer, 13 P.3d at 799 (examining the term "dangerous condition" as used in the public building waiver in CGIA subsection 106(1)(c)).  Additionally, "[a] dangerous condition shall not exist solely because the design of any facility is inadequate."  § 24-10-103(1.3).

¶17  With this general framework in mind, we turn to the Lovelands' proposed application of the term "physical condition."

### B.  "Dangerous Condition" Requires a Physical Defect in the Construction or Maintenance of the Apparatus

¶18  To show that the zip line was a dangerous condition under the foregoing test, the Lovelands focus on the meaning of "physical condition," arguing that there is nothing in the statute or case law that prevents the zip line itself—rather than some condition of the zip line—from being the relevant "physical condition" here.  The court of appeals took a similar approach, concluding that "an individual playground apparatus is a physical condition of a playground."  Loveland II, ¶ 17.  But the Lovelands and the division's interpretation fails for at least two reasons.  First, it does not square with existing precedent.  Second, it fails to recognize that the second through fourth factors of the dangerous-condition test modify the first, such that whether something is a "physical condition" cannot be determined without reference to the other factors; if any

8

one of those other factors is not satisfied, there can be no "physical condition" for purposes of the dangerous-condition test. We address these two points in turn.

¶19 First, this court's previous cases interpreting section 24-10-103(1.3) have suggested that in order to be a "dangerous condition" within the meaning of that section, a "physical condition" must be a physical or structural defect. See Jenks v. Sullivan, 826 P.2d 825, 830 (Colo. 1992) ("The dangerous condition must stem from a physical or structural defect in the building."), overruled on other grounds by Bertrand v. Bd. of Cty. Comm'rs, 872 P.2d 223 (Colo. 1994); see also Springer, 13 P.3d at 799 (considering the first factor satisfied where a "threshold plate [at the building entrance] protruded from the floor at a height approximately twice that called for in the building plans"). Indeed, in St. Vrain I, after concluding that an individual zip line apparatus on a playground does not qualify as a "public facility," we did not suggest that the zip line could nevertheless be a dangerous condition of the public facility, but rather that "a condition on such an apparatus might qualify as a dangerous condition." ¶ 18, 325 P.3d at 1020 (first emphasis added); see also id. at ¶ 18 n.8, 325 P.3d at 1020 n.8 ("For example, the zip line could contain a 'dangerous condition' if it had a rusty or obstructed track due to being negligently constructed or maintained by the District."). [2]

---

[2] Longbottom v. State Board of Community Colleges & Occupational Education, 872 P.2d 1253 (Colo. App. 1993), and Hendricks ex rel. Martens v. Weld County School District No. 6, 895 P.2d 1120 (Colo. App. 1995), decisions not binding on this court, do not require a different result. Neither case directly examined whether the injury-causing apparatus or structure at issue was in fact a "physical condition" consistent with the statute. But to the extent that either case is inconsistent with the result we reach today, we hold that it is no longer good law.

¶20     Second, the other factors in the dangerous-condition test further limit what can be a "physical condition" for purposes of the test. Most important for our analysis, the physical condition must be caused by some negligent act or omission of the public entity in constructing or maintaining the facility. For example, in Padilla ex rel. Padilla v. School District No. 1, 25 P.3d 1176, 1178 (Colo. 2001), a developmentally disabled child, Padilla, sought to sue her school district for negligence after she was left alone in a stroller propped against the door of a storage closet as a "time out." Padilla became agitated, the stroller fell backward, and Padilla struck her head against the floor and fractured her skull. Id. Padilla alleged that the placement of the stroller combined with the use of the storage room as a "time out" area created a dangerous condition in a public building. Id. at 1179. We concluded that "[w]hile Padilla may have sufficiently alleged an act of negligence . . . she did not demonstrate a sufficient connection between use of the state of the building and a construction or maintenance activity or omission for which the School District is responsible." Id. at 1183. We held that Padilla's complaint lacked sufficient facts to support a waiver of immunity. Id. The Lovelands' complaint is similarly lacking here. It offers no facts to suggest that the zip line was negligently constructed or maintained. Therefore, like the plaintiffs in Padilla, the Lovelands cannot satisfy the dangerous-condition test.

¶21     In sum, the statutory language at issue and our precedent support the notion that the Lovelands must prove a defect in the condition of the zip line. But they do not even allege such a defect. Instead, they make what amounts to a design argument, which we address next.

10

## C. The Playground Design Argument Fails

¶22 The Lovelands claim that they have indeed alleged a negligent act related to construction: they submit that the District's negligent act was its decision to construct the zip line on the school playground. They argue that a District employee made the decision to purchase and install the zip line and that the employee knew or should have known that a zip line is dangerous. Even so, this is an argument about the design of the playground, which section 24-10-103(1.3) clearly prohibits. § 24-10-103(1.3) ("A dangerous condition shall not exist solely because the design of any facility is inadequate."); see also, e.g., Estate of Grant v. State, 181 P.3d 1202, 1205 (Colo. App. 2008) ("Design means 'to conceive or plan out in the mind,' and conditions attributable 'solely to inadequate, or risky, design' that are intrinsic to the general state of the road as initially constructed may not be considered a dangerous condition and do not waive immunity." (Citation omitted.)).

¶23 The Lovelands argue that the zip line satisfies the dangerous-condition test because the zip line was inherently dangerous and that the District was negligent in placing something inherently dangerous on the playground. But the recreation-area waiver does not recognize such blanket claims of danger based on the design of a public facility. On the contrary, it explicitly precludes such claims.

## IV. Conclusion

¶24 A non-negligently constructed and maintained piece of playground equipment cannot be a "dangerous condition" under the CGIA's recreation-area waiver. Because the facts the Lovelands allege cannot satisfy the dangerous-condition requirement, the

11

recreation-area waiver does not apply, and the District's immunity under the CGIA remains intact. The trial court was correct to conclude that it lacked jurisdiction over the Lovelands' tort action and to grant the District's motion to dismiss. Accordingly, we reverse the judgment of the court of appeals, and we remand to that court to reinstate the trial court's order dismissing the complaint in this case.[3]

---

[3] Because we conclude that the Lovelands' claim is insufficient for the reasons stated above, we do not reach the second question on which we granted certiorari review, which asks us to interpret the second factor of the dangerous-condition test.